**In re TRUST DEED CENTER, INC., Debtor.**

**TRUST DEED CENTER, INC., Plaintiff,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant.**

Bankruptcy No. SA 83–04284 PE. Adv. No. SA 83–2941 PE.

United States Bankruptcy Court, C.D. California.

Feb. 10, 1984.

Richard Barnett, Blake, Niermann & Barnett, Santa Ana, Cal., for debtor/plaintiff.

Jayne Kaplan, Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER AWARDING SANCTIONS AGAINST WILLIAM E. BAKER, ATTORNEY FOR DEBTOR–PLAINTIFF

PETER M. ELLIOTT, Bankruptcy Judge.

On January 17, 1984 I signed and filed findings of fact and conclusions of law and an order in favor of the Bank of America annuling the stay to validate a September 21, 1983 foreclosure of real property. In that order a separate hearing was set to consider sanctions against Robert Peterson and counsel for the debtor, William E. Baker.

In the Bank's ex parte application for an order confirming foreclosure sale nunc pro tunc, treated as a response to the debtor's complaint herein, the Bank sought a contempt citation against Baker. It is alleged that Baker, as counsel for three different entities, filed multiple Chapter 11 cases in bad faith, for the purpose of forestalling Bank of America's foreclosure of certain improved real property in which Baker himself, as well as his clients, had an interest. I determine that sanctions should be imposed for the last two filings.

## FACTS

The real property which is the subject of the multiple filings is a 4.8 acre lot upon which the Plaza Mirada Shopping Center stands. The title to the property was held by SBL partnership, which has three partners: Jack Shine, David Bock and Lef-Tel, Ltd. William Baker is the general partner of Lef-Tel. The Bank of America made a construction loan to SBL and took a first deed of trust in the property as security. In spite of two extensions granted by the Bank, SBL was unable to meet its obligations. Bank of America proceeded to foreclose upon the property. On July 15, 1982, before a foreclosure sale could be conducted, SBL transferred its interest in the property to a newly formed corporation, SBL Partnership, Inc., which filed a Chapter 11 case on July 16, 1982, case numbered SA 82–03099 AP.

The Bank and the debtor, SBL Partnership, Inc., entered into a stipulation continuing the stay in effect until April 30, 1983. The stipulation required monthly interest payments of $15,000. be paid to the Bank. The stipulation was signed by the parties and approved by Bankruptcy Judge Phelps on October 29, 1982.

SBL defaulted on the interest payments and Bank of America proceeded with foreclosure. Prior to default, SBL Partnership, Inc. borrowed money for the purpose of meeting the interest payments. The lenders, Baker and a group including Robert Peterson, were given junior deeds of trust in the property to secure their loans. The debtor did not seek authority to incur secured credit as required by 11 U.S.C. § 364(c).

On or about February 10, 1983, at an ex parte hearing, Judge Phelps ruled that SBL Partnership, Inc. was in default under the October 29, 1982 stipulation and terminated the stay.

On February 11, 1983, Baker conveyed his interest in his junior deed of trust on the subject property to Lef-Tel, Ltd. Lef-Tel, Ltd. filed a Chapter 11 case on the same

day, February 11. William Baker was attorney of record for Lef-Tel. Since Lef-Tel's newly acquired interest in the trust deed became part of the estate, Bank of America was again stayed from foreclosure. Bank of America immediately filed for relief from stay. The motion was unopposed and relief from stay was granted on April 11, 1983. Bank of America again proceeded with foreclosure. The sale was scheduled for September 21, 1983.

On September 19, Robert Peterson assigned his interest in his trust deed to the debtor herein, Trust Deed Center, Inc., a previously inactive corporation with headquarters at the same address as William Baker's law practice. Trust Deed Center, Inc. (TDC), represented by William Baker, filed its Chapter 11 case on September 20. The Bank nevertheless allowed the foreclosure sale to take place, and the Bank purchased at the sale.

Baker, on behalf of TDC, filed an application for issuance of an order to show cause and for contempt against Bank of America for violating the automatic stay. Bank of America filed an application for order confirming sale and citation for contempt. On September 30, 1983 I granted Bank of America's application and refused TDC's, reserving jurisdiction to impose sanctions, if appropriate.

## DISCUSSION

William Baker was the principal initiator of the foregoing litigation. He not only prepared and filed each of the bankruptcy petitions, as attorney of record for each of the debtors, but he also is an interested party, intimately involved in the business of each of the debtors.

The applicable statute in this case is 28 U.S.C. § 1927, which provides as follows:

Any attorney or other person admitted to conduct cases in any court in the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees incurred because of such conduct.

Baker freely admits that the purpose of each of the three filings was to prevent Bank of America from foreclosing on the subject property.

I do not consider the transfer from the SBL partnership to SBL Partnership, Inc. on the eve of the Chapter 11 filing by the transferee to be relevant as to the issue of sanctions. There appeared to be a business purpose in that several creditors gave up their liens on the real estate in return for stock in SBL Partnership, Inc. In addition, as a dog is entitled to one bite, so should a debtor be entitled to one bankruptcy filing before liability is imposed for subsequent bites—or filings.

The question then is whether, having failed in his first attempt to stave off foreclosure, Baker's second and third attempts were an unreasonable multiplication of proceedings. *In re Springpark Associates*, 623 F.2d 1377 (9th Cir.1980) is a starting point. In that case, the debtor filed a Chapter XII case under the old Act. The debtor entered into a settlement agreement with a secured creditor in which he agreed to a specific time for foreclosure if sale or refinance were not accomplished by then. The stipulation was incorporated into a court order. At the same time, the Chapter XII was dismissed. When the property could not be sold or refinanced in the time permitted in the order and the creditor started foreclosure, the debtor filed a new Chapter XII triggering an automatic stay of foreclosure under Rule 12–43. The Court of Appeals held that the agreement entered into in the original Chapter XII case was binding on the debtor and constituted a forfeiture of his right to file another Chapter XII.

In the facts presently before the court, SBL Partnership, Inc. had also agreed to a specific time for foreclosure and obligated itself to certain conditions, which if not met, would trigger a lifting of the automatic stay. As in *Springpark*, the agreement was binding on the debtor in any subsequent proceeding. Though SBL Partnership, Inc. itself did not refile, the rule in *Springpark* should be read broadly so as to

include such abuses of the Bankruptcy Code as we face here. Baker's creative manipulation of the bankruptcy laws in order to avoid SBL Partnership, Inc.'s obligations under the stipulation should not be allowed to succeed.

In *Springpark,* the court stated that permitting the stay to remain, in contravention to the settlement agreement, constituted irreparable harm, not only to the appellee, but to the judicial process itself. In *In re Herrera,* 23 B.R. 796 (Bkrtcy.App. 9th Cir. 1982), the court stated that an attorney who seeks to evade a stipulation not only harms the judicial process but demeans himself as an attorney.

■ 28 U.S.C. § 1927 is a weapon which the court may use in order to protect the judicial process from abuse, punish those who have abused it, seek to deter those who may abuse it, and provide relief for the party who has had to contend with the sanctioned party's multiple litigation. The conduct of Baker qualifies him as a worthy candidate for application of the statute.

In *The Matter of Eck,* 34 B.R. 11 (Bkrtcy. M.D.Fla.1983), the court found it proper to impose attorney's fees against an attorney pursuant to 28 U.S.C. § 1927 for multiple filings. Baker is certainly as culpable as the attorney in *Eck.* The sanctions to be imposed are thus, not only proper, but necessary in order to protect the integrity of the Bankruptcy Code and the judicial process.

In *In re Bystrek,* 17 B.R. 894, 895 (Bkrtcy. E.E.Penn.1982), the court succinctly expresses the need for strong sanctions against attorneys guilty of bad faith multiple filings:

> The troubling aspect of this case is that debtor's counsel seems to believe that Bankruptcy Court is a legal playground where debtor can indulge in an elaborate game of catch-me-if-you-can with her creditors. Such is not the case. Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. As a member of the bar and an officer of the court, coun-

sel especially should be aware of this fact. The game attempted in this case cannot be permitted.

I conclude that in filing the Lef-Tel and Trust Deed Center, Inc. bankruptcies, Mr. Baker unreasonably and vexatiously multiplied the proceedings. The sanctions that could be imposed include disbarment from the bankruptcy courts of this district. However, I choose to impose a monetary sanction.

■ The declaration of counsel for the Bank shows 24 hours spent on the second and third Chapter 11 cases. House counsel for the Bank declares that the Bank charges $60. per hour internally to other units of the Bank. I therefore assess sanctions against William E. Baker in the sum of $1,440.00, payable to the Bank.