In re 2218 BLUEBIRD LIMITED
PARTNERSHIP, Debtor.

SUNDSTROM MORTGAGE CO.,
INC., Petitioner,

v.

2218 BLUEBIRD LIMITED PARTNER-
SHIP, Debtor, Respondent.

Bankruptcy No. 84–00814–P11.

United States Bankruptcy Court,
S.D. California.

June 13, 1984.

Gary E. Slater, Hinchy, Witte, Wood, Anderson & Hodges, San Diego, Cal., for petitioner.

2218 Bluebird Limited Partnership, pro. per.

## MEMORANDUM AND ORDER AWARDING SANCTIONS AGAINST LESLIE BEAUMONT AND CARL W. HAYS

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

### I

### BACKGROUND

This matter is before the Court on the Application of Sundstrom Mortgage Co., Inc., for sanctions against the Debtor herein and its principals, Leslie Beaumont and Carl W. Hays, for the allegedly frivolous and bad faith filing of the within Chapter 11 bankruptcy petition.

This Opinion is filed to explain this Court's decision, concluding that the filing of this bankruptcy case by these individuals was an abuse and an imposition on the Bankruptcy Court, warranting appropriate sanctions.

### II

### FACTS

Sundstrom Mortgage Co., Inc., ("Sundstrom") is the beneficiary of a note, having a principal balance of $24,000, secured by a deed of trust on property located at 2218 Bluebird Street, San Diego, California (the "property"). Gary E. Hill ("Hill") was the owner of the property and the trustor under the deed of trust. Pursuant to the terms of the note, all sums became due and payable on April 15, 1983. Hill failed to make payment and Sundstrom initiated a non-judicial foreclosure proceeding. Hill averted the actual sale by filing a bankruptcy petition under Chapter 13 of the United States Bankruptcy Code ("Code") on September 2, 1983.

On November 4, 1983, Hill and Sundstrom entered into a stipulation providing that Hill would have until April 1, 1984, to sell the property and pay Sundstrom. Hill failed to make certain payments provided in the stipulation and Sundstrom sought and obtained an *ex parte* order terminating the automatic stay on January 25, 1984.

Sundstrom rescheduled its foreclosure sale for February 27, 1984. On February 24, 1984, without prior approval of the Bankruptcy Court and without consideration, Hill quitclaimed the Property to Leslie Beaumont ("Beaumont"). The property was transferred subject to an oral "trust agreement" providing that "... as soon as we completed the loan on the property then we would return back to him all his equity in the property, less all the fees and costs." [Reporter's Transcript, p. 18, line. 14–16]. As part of this transaction, Hill also entered into an agreement with American Consolidated Group ("ACG").[1] In return for securing an investor, putting a loan package together and doing all the advertising concerning Hill's property, ACG could retain $6,500 directly out of any refinancing escrow. Of those funds, Beaumont was to receive approximately $1,000 for his consultation services.

On February 27, 1984, Beaumont conveyed title to the property to another entity named "2218 Bluebird Limited Partnership" (the "Debtor" herein). On the same day, the Debtor filed this Chapter 11 petition through Beaumont, its "general partner in pro per", thus forestalling yet another of Sundstrom's foreclosure sales.

The Debtor's statement of affairs lists the Debtor's business as "financial restructuring." Beaumont is listed as the general partner and Hays is listed as the sole limited partner. The only asset of the partnership is the subject real property with secured encumbrances totaling $72,500 held by Great American Federal, Sundstrom Mortgage and Hays.[2] No unsecured creditors are listed.

On March 13, 1984, Sundstrom filed an *ex parte* application with this Court seeking termination of the automatic stay and monetary sanctions. After reviewing the *ex parte* application and the documentation

in support thereof, this Court ordered the stay annulled, leaving Sundstrom free to exercise its rights as provided under its note and deed of trust. On March 16, 1984, the property was sold at Sundstrom's foreclosure.

### III

### ISSUE

Whether the filing of this Chapter 11 case constituted conduct tantamount to bad faith, warranting sanctions against either this Debtor, Beaumont or Hays, in either their representative or individual capacities.

### IV

### ANALYSIS

In order for this Court to impose sanctions against these parties, there must first be a finding that their conduct with respect to this bankruptcy case constituted or was tantamount to bad faith.

A. *The Creation Of The Debtor And The Transfer To This Debtor Of Property Out Of The Estate Of An Existing Bankruptcy Case Was Solely For The Purpose Of Delay And Constituted Bad Faith.*

■ Section 1112(b) does not *expressly* require a petition for relief under Chapter 11 to be filed in good faith. However, as recently noted by the Appellate Panel in *In Re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (BAP 9th Cir.1983), there is an *implied* requirement of good faith when filing any bankruptcy petition.

■ There is no precise definition as to what good faith entails. However, evidence of an intent to cause hardship or delay to creditors by resorting to the Chap-

---

1. American Consolidated Group ("ACG") is an entity which at one time was owned by Beaumont, as sole proprietor. Sometime in 1983, Beaumont turned ACG over to Carl W. Hays ("Hays") and Marilyn Robbins ("Robbins"). Beaumont now considers himself merely a "sub-

contractor" for the company and continues to work for the company as a "consultant."

2. According to Beaumont's testimony, the property has been appraised for purposes of refinancing, as having a value of between $72,000 and $75,000.

ter 11 device, merely for the purpose of invoking the automatic stay without an intent or ability to reorganize financial activities, is an abuse of the reorganization process. Such conduct is sufficient "cause" upon which a case may be dismissed, and where appropriate, subject to sanctions. *See, In re Trust Deed Center*, 36 B.R. 846, 848–49 (C.D.Cal.1984).

The so-called "new debtor syndrome" is commonly raised by secured creditors who find that their foreclosure sale is stayed by the transfer of the property to a new entity which immediately files bankruptcy. *See, generally, In Re Trust Deed Center, supra; In Re Thirtieth Place, Inc., supra; In Re Wong,* 30 B.R. 87 (C.D.Cal.1983); *In Re Sacramento Metropolitan Real Estate Investors,* 28 B.R. 228 (E.D.Cal.1983); *In Re Jack-Hemp Associates,* 20 B.R. 412 (S.D.N.Y.1982); *In Re Avan, Inc.,* 25 B.R. 121 (D.Ore.1982); *In Re FJD, Inc.,* 24 B.R. 138 (D.Nev.1982); *In Re Alison Corp.,* 9 B.R. 827 (S.D.Cal.1981); *In Re Dutch Flat Investment Co.,* 6 B.R. 470 (N.D.Cal.1980).

■ However, the transfer of assets to a new entity on the eve of a Chapter 11 filing is merely evidence of an improper state of mind. Such transfers are subject to careful scrutiny by the Court. *See, In re Levinsky,* 23 B.R. 210, 218 (E.D.N.Y. 1982). The Court must look to the substance of what has been done to determine whether the transfer to the new entity has detrimentally altered the substantive or procedural rights of any creditor regarding assets which were available prior to the transfer. *See, In Re Beach Club,* 22 B.R. 597, 599 (N.D.Cal.1982). A filing may be in good faith despite the recent creation of the debtor if the debtor was organized and the case was filed for a legitimate business

reason with an eye towards legitimate reorganization. *See, In Re Spenard Ventures,* 18 B.R. 164, 167 (D.Alaska 1982); *see also, In Re I-5 Investors, Inc.,* 25 B.R. 346, 353 (D.Ore.1982).

■ Like the transfer of the property on the eve of filing, the absence of scheduled unsecured creditors by itself does not indicate bad faith *per se;* it is merely another factor to be considered when examining the debtor's motive for the filing. *See, Matter of Gagel & Gagel,* 24 B.R. 671, 672 (S.D. Ohio 1982).

■ The situation before this Court is neither the standard "multiple filing" situation by the same debtor, nor the classic "new debtor syndrome" situation outlined above. Rather, this filing represents a combination of the two.

Hill initially filed his Chapter 13 to avoid the pending foreclosure by Sundstrom. Having defaulted under the terms of the stipulation, Hill faced the inevitable foreclosure by Sundstrom on February 27, 1984. Beaumont convinced Hill to frustrate Sundstrom's foreclosure sale by transferring the property. Despite Beaumont's actual knowledge of the pending foreclosure by Sundstrom and the fact that this Court exercised jurisdiction over this property, Beaumont transferred the property to a newly-created entity which became the debtor herein.

This Debtor has no unsecured creditors; the admitted business of the debtor is merely "financial restructuring." At both the 341(a) first meeting of creditors as well as the hearing regarding this matter, Beaumont admitted to being the general partner of at least nine similar "limited partnership" debtors.[3] Beaumont further noted that the only reason for the creation of the

---

**3.** This Court takes judicial notice of the following list of bankruptcy cases filed in this District where Beaumont is both "general partner" and attorney in fact. In each of these cases there are no secured creditors, and either Hays, ACG or the transferring party are listed as the limited partner. The Court further notes that this is probably only a partial list, given the difficulty in discovering the actual cases filed by Beaumont in his representative capacity:

| DEBTOR | CASE NO. | DATE FILED |
|---|---|---|
| 2631–45 Grove Ltd. Partnership | 83–02743–P11 | 6/6/83 |
| 1213–7–E Ltd. Partnership | 83–05136–P11 | 11/3/83 |
| 10–N–S Ltd. Partnership | 83–05605–M11 | 12/6/83 |
| 28319 Valley Center Ltd. Partnership | 83–05753–M11 | 12/15/83 |
| 3111–19–39 Ltd. Partnership | 83–05809–P11 | 12/19/83 |
| 293 Coolwater Drive Ltd. Partnership | 83–5927–M11 | 12/12/83 |

debtor was "to secure new financing on this property and to restore that back to the original parties and [sic] through an oral trust agreement." (Transcript of proceedings—Section 341(a) hearing, p. 7, line 9).

It is clear from these facts that there is no *bona fide* economic basis for the creation of the debtor, the transfer to it of the property and the filing of the petition. The property is heavily encumbered, making refinancing both impractical and unlikely. Beaumont and Hays created an entity solely for the purpose of filing bankruptcy.[4] Their only intent was to buy additional time to refinance and obtain their $6,500 fee at Sundstrom's expense.

The final consideration in determining whether this case was filed in bad faith is the actual harm to the creditors as a result of the transfer. As noted by the Panel in *In Re Thirtieth Place, Inc., supra,* at p. 506, mere delay to creditors, in and of itself, will not constitute bad faith or give rise to dismissal. However, when added to the other patently abusive factors which are present here, the resulting injury is sufficient to support a finding of bad faith. In that case, as in this case, a new debtor entity was created to receive property from an existing debtor for the sole purpose of delay. This petition was filed to subvert the legitimate rights of Sundstrom. There was no reasonable expectation that the Debtor could successfully reorganize. Under these circumstances, there can be no other conclusion than the filing was frivolous and done in bad faith.

B. *Beaumont And Hays Are Subject To Sanctions For Abusive Filing.*

■ Sanctions may be imposed upon an *attorney* who "multiplies the proceed-

ings in any case unreasonably and vexatiously." 28 U.S.C. Section 1927. The power to sanction similar conduct by the litigants themselves is based upon this Court's inherent power to protect the orderly administration of justice and maintain the authority and dignity of the Court. 11 *U.S.C.* 105(a); 28 U.S.C. § 1481. *See, In re Roadway Express, Inc., v. Piper, et al.,* 447 U.S. 752, 764–65, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1979); *see also, Knorr Brake Corp. v. Harbil, Inc.,* 556 F.Supp. 484, 486 *n. 3* (D.C.Ill.1983).

In the recent case of *U.S. v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983), the Court of Appeals noted that unlike sanctions under Section 1927 which require a finding of reckless or actual bad faith conduct, sanctions under the Court's inherent power merely require a finding that the conduct constituted or was tantamount to bad faith. It has already been determined that the conduct of both Beaumont and Hays falls into the latter category and is subject to this Court's inherent contempt power.

■ Where as here, the purpose of the contempt action is to coerce compliance, deter future frivolous conduct, and compensate for injuries suffered by a private party, the contempt is civil and this Court has discretion to fashion an appropriate remedy. *See, e.g., McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949); *In re Reed,* 11 B.R. 258, 276–277 (D.Utah 1981); *In re Johns-Manville Corp.,* 26 B.R. 919, 923 (S.D.N.Y.1983).

■ As long as the award is not punitive, the remedy may include monetary

| DEBTOR | CASE NO. | DATE FILED |
|---|---|---|
| 348 North Larch Ltd. Partnership | 84–000058–M11 | 1/5/84 |
| 2625 Balboa Vista Ltd. Partnership | 84–00117–M11 | 1/10/84 |
| 1217 Helix Ltd. Partnership | 84–00396–M11 | 1/26/84 |
| 5454 Conrad Ltd. Partnership | 84–00397–P11 | 1/26/84 |
| 10230 Rio Camino Ltd. Partnership | 84–00950–M11 | 3/12/84 |

4. This Court finds that the Debtor is a general partnership rather than a limited partnership. Beaumont testified that neither a written limited partnership agreement was executed nor a certificate of limited partnership filed as required by California law. *California Corporations Code* Section 15521(a). Like Beaumont, Hays is a general partner and is liable for any deficiency in the partnership's estate. 11 U.S.C. Section 723. Hays and Beaumont, as the gener-

sanctions representing the actual loss to opposing parties and an amount necessary to restore such parties to their pre-contempt position. *See, In re Zartun,* 30 B.R. 543, 546 (9 Cir.1983). Dismissal is a common sanction when the case is found to have been filed in bad faith. *In re Thirtieth Place, Inc., supra,* 30 B.R. at 506. Where appropriate, in order to avoid future abuses of the Bankruptcy Code, the dismissal should be given *res judicata* effect, and a bar to future filings for a specified period of time without first seeking court approval. *In re Trust Deed Center, supra,* 30 B.R. at 849; *In re Springpark Associates,* 623 F.2d 1377, (9th Cir.1980).

Either courts are hesitant to award sanctions for *in pro per* abusive bankruptcy filings or the facts in the present case are truly egregious. Whichever the reason, there are few cases where monetary sanctions are awarded against the actual litigant as opposed to its counsel. *See, generally, In re Jolly Joint, Inc.,* 23 B.R. 395, 402 (E.D.N.Y.1982) (Debtor's principal acted upon advice of counsel and did not have sufficient *scienter* to hold in contempt). Those bankruptcy courts which have awarded monetary sanctions either by statute or pursuant to the inherent power of the court have done so only against the debtor's counsel. *See, generally, In re Trust Deed Center, supra; Matter of Eck,* 34 B.R. 11 (M.D.Fla.1983); *In re Bystrek,* 17 B.R. 894 (E.D.Penn.1982); *In re Emergency Bacon Corp.,* 27 B.R. 757 (S.D.N.Y. 1983); *In re Johnson,* 24 B.R. 832 (E.D. Penn.1982).

The facts in the present case are very similar to those in *In re Trust Deed Center, supra.* In that case, interest in a parcel of real property was transferred three times to avoid foreclosure. Each transfer was made to a new entity which would then file a Chapter 11. Subsequent transfers of junior security interests in the property occurred immediately after relief from stay was obtained in the preceding bankruptcy. The secured creditor, Bank of America, sought sanctions against the same attorney of record for each debtor. The attorney was also an interested party in each debtor entity. Relying upon Section 1927, Judge Elliot found that there was no business purpose for the latter two filings other than preventing the bank from foreclosing on its security interest, and imposed sanctions of $1,440, representing the attorneys fees of the bank.

The only difference between the present case and the situation in *Trust Deed Center, supra,* is the *pro per* status of Beaumont and Hays. The distinction, however, does not change the determination that sanctions are appropriate. On the contrary, implied in Judge Elliot's opinion is a finding that when the attorney for the debtor is also an interested party in the bankruptcy, the court should be *more* inclined to impose sanctions for such conduct.

Beaumont is the attorney-in-fact for this debtor as well as eleven similar Chapter 11 debtors. Beaumont is likewise the general partner in each of those cases. This Court has already determined that Hays is a general partner of this debtor and is listed as a limited partner in at least one of the other filings. Both Beaumont and Hays were the moving parties behind the creation of the debtor, the transfer of property out of an existing bankruptcy, and the frivolous filing of this case. These individuals have abused the jurisdiction of this Court and are subject to monetary sanctions to compensate Sundstrom.

The declaration of counsel for Sundstrom indicates that $2,849 in attorneys fees have been incurred in bringing the relief from stay motion, the order to show cause, and the application for sanctions. This figure appears reasonable and monetary sanctions in that amount should be assessed against Beaumont and Hays and payable to Sundstrom.

This Court additionally finds that this bankruptcy case should be dismissed. Finally, in order to deter future abusive conduct, this debtor, Beaumont and Hays, ei-

al partners, are both responsible for the filing

and may be subject to sanctions.

ther in their individual or representative capacities, should be prohibited from filing any bankruptcy petitions for the next six (6) months without first obtaining an order of this Court.

## V

### CONCLUSION

The creation of this debtor, the transfer of property from an existing bankruptcy case to this debtor, and the subsequent filing of this Chapter 11 proceeding, were done solely to invoke the protection of the automatic stay without an intent to reorganize. The conduct of the principals of the debtor in filing this frivolous petition constituted or was tantamount to bad faith.

This Court has the inherent power to impose sanctions against those parties that abuse the jurisdiction of the Bankruptcy Court. Monetary sanctions are appropriate against the litigants themselves where there is a sufficient showing of bad faith. Sanctions are assessed to compensate for the actual injuries suffered by a private party.

An appropriate sanction for a bad faith and abusive bankruptcy filing is the dismissal of the case. Where it is necessary to deter future misconduct, prohibition as to future filings by the debtor, its principals or related entities, for a specified period of time, without prior court approval, is also appropriate.

This Opinion shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. Sundstrom shall submit an appropriate order within ten (10) days of the filing of this Opinion.