**In re HBA EAST, INC., Round One Productions, Inc., Jeffrey D. Levine, Debtors.**

**Bankruptcy No. 187–70557–353.**

United States Bankruptcy Court, E.D. New York.

June 22, 1989.

See also, Bkrtcy., 87 B.R. 248.

Arthur Steinberg, John P. Sirico, Kaye, Scholer, Fierman, Hays & Handler, Norman Klasfeld, Beal, Klasfeld, Lentz & Romash, New York City, for debtors.

Brian M. Cogan, Elaine Nussbaum, Stroock & Stroock & Lavan, New York City, H. Dixon Montague, Vinson & Elkins, Houston, Tex., for movants.

## DECISION AND ORDER ON MOTION FOR SANCTIONS

JEROME FELLER, Bankruptcy Judge.

Before the Court is a motion under Bankruptcy Rule 9011 by JEA Boxing Company, Inc. and Pine Hill Investments, Inc., d/b/a Houston Boxing Association ("JEA" or "Movants") for an order imposing sanctions against HBA East, Inc., ("East"), Round One Productions, Inc. ("Round One") and Jeffrey D. Levine (collectively "the former Debtors") and their co-counsel in connection with the dismissal of these Chapter 11 cases. Movants request the Court to punish the former Debtors by way of awarding them reasonable attorney's fees incurred in procuring the dismissal of the cases.

This motion is the latest round in a fierce bout between two boxing industry entrepreneurs, Josephine Abercrombie and Jeffrey Levine, each fighting in the guise of their respective corporate entities, two of Levine's corporate entities being East and Round One, the former corporate Debtors, and two of Abercrombie's being the entities jointly described here as JEA. A detailed account of the relationship between these two pugilists as manifested in the complex web of dealings between and among their various entities was outlined in this Court's Decision and Order dismissing these Chapter 11 cases for having been filed in bad faith. That decision is reported at 87 B.R. 248. For purposes of this sanctions motion, however, we set forth the following brief summary.

Sometime in 1984, Levine, a boxing promoter, and Abercrombie, a funder familiar with the boxing arena, agreed to collaborate on the promotion of prize fighters and boxing events. After lengthy negotiations, the venture eventually took the form of a limited partnership in which Levine would provide the contacts and expertise, and Abercrombie and/or her entities would supply the funds. East, the principal former Debtor herein, was created as the corporate vehicle whereby Levine entered into this business relationship with the Abercrombie entities, JEA. JEA would be the limited partner and East would serve as the general and managing partner, promoting boxing events on behalf of the limited partnership called HBA East, Ltd.

The business relationship as contemplated in the limited partnership agreement continued for approximately two years, during which time East and the other former Debtors received substantial funds from Abercrombie and/or her entities. Evidencing this essential link to the Abercrombie entities, is East's very name; its initials "HBA" derive from Abercrombie's corporation "Houston Boxing Association". It was asserted by Movants that they had advanced some $1.2 million to the former Debtors for which they had seen no repayment, return or accounting. In or about December, 1986, the business relationship between Levine and Abercrombie irreparably ruptured and Abercrombie terminated all funding to East in early 1987. Asserting that Levine had breached the limited partnership agreement, Abercrombie invoked a section of the agreement which provided that in the event of a breach, JEA had the right to convert East's interest in

the partnership from general partner to limited partner and to oust it from any further participation in the control of the partnership. In the name of JEA, Abercrombie also commenced an action against the former Debtors and other Levine entities in a Texas state court, alleging various Texas state law claims including fraud and breach of contract.

On the eve of their date to file an answer in the Texas action, Levine, East and Round One, represented by Norman Klasfeld, Esq. filed Chapter 11 petitions in this Court. Levine's affidavit accompanying the Chapter 11 petitions of East and Round One asserted that the Texas lawsuit was meritless and that the Texas court lacked jurisdiction to adjudicate the controversy. By filing when they did, however, the former Debtors were able to invoke the automatic stay, thereby obviating the need to answer the Texas complaint.

The Texas action thus stayed, the Movants commenced an adversary proceeding in this Court alleging state law claims similar to those raised in the Texas action. An expedited discovery schedule had been set and Norman Klasfeld, Esq., a solo practitioner, called in the firm of Kaye, Scholer, Fierman, Hays and Handler as co-counsel. In the midst of the discovery, JEA moved to dismiss the Chapter 11 cases pursuant to 11 U.S.C. § 1112(b) based upon the Debtors lack of good faith in filing their petitions.

In the Decision granting the motion to dismiss, we made the following findings. East was essentially a one-man operation, run by Levine, and dependent upon funding from Abercrombie for its operations. Although certain boxing promotions made money, East, on the whole, was not profitable prior to the Chapter 11 filing. Its assets were claimed promotional rights contracts with various fighters. The value of these contracts was questionable. Whatever their value, the very ownership of these contracts was hotly disputed by JEA, who had assertedly ousted East/Levine from control over the limited partnership, thus placing these contracts under the control of JEA. East's schedules reflected secured debt (auto loan) of $16,000, priority debt

(taxes) of $75,000 and general unsecured debt of $287,000. The bulk of the unsecured debt ($250,000) was listed as disputed obligations to Movants, $125,000 each to Pine Hill and JEA. Round One, the other former corporate Debtor, was essentially a non-operating entity with basically one asset, the asserted contract rights to promote Carl Williams. Those asserted rights, however, were challenged by Williams himself, and by JEA who asserted substantial interests in the contract predicated upon, among other things, a security interest in Round One dating back to 1984 and the advancing of funds in connection with the promotion of Williams. Round One's petition reflected unsecured debt of $257,500 of which $250,000 was attributed to the disputed claims of Movants. Levine's only reported asset of value was the interest in his home. Levine's liabilities consisted of mortgage debt on the home, some estimated and disputed tax liabilities, certain loans from two individuals, monies owing to eighteen unsecured creditors, each in sums less than $800, and finally the disputed debt to Movants.

We granted JEA's motion to dismiss on the determination that the former Debtors had filed their Chapter 11 petitions as a litigation tactic; that the cases were a two-party dispute involving non-bankruptcy law; that there was no evidence that creditors other than Movants were clamoring for payment; that the Debtors' business operation was highly speculative and the only assets of any value were vigorously disputed; that there was little money to run the business, and apparently no cognizable assets to fund a plan of reorganization.

The foregoing findings and conclusions upon which the Court predicated its dismissal of the Chapter 11 cases were not easily reached. The issues were fairly litigated on both sides and judicially resolved after lengthy evidentiary hearings in which much testimony was adduced, numerous exhibits introduced and considerable argument heard. In addition, both sides submitted thorough, well researched memoranda of law and proposed findings of fact and conclusions of law. The decision on the

motion to dismiss having been rendered on June 3, 1988, JEA, by application dated June 17, 1988, and supplemental application dated July 11, 1988, requested that the dismissal be with prejudice. In addition, by motion dated July 11, 1988, JEA requested, for the first time, that sanctions be imposed pursuant to Bankruptcy Rule 9011, against the former Debtors and their co-counsel Kaye, Scholer, Fierman, Hays & Handler and Norman Klasfeld, Esq. for filing and maintaining these cases in bad faith. After a hearing held on July 28, 1988, this Court issued a Memorandum Opinion and Order dated July 29, 1988 on the application for dismissal with prejudice, barring the Debtors from filing petitions for relief under Title 11 for one year, except on prior leave of this Court upon notice to the Movants. The court reserved decision on the sanctions request and the record was finally closed on September 8, 1988.

## DISCUSSION

Any discussion of shifting the burden of attorney's fees must begin with the traditional "American Rule" which states that each party to litigation bears his own costs, including attorney's fees, regardless of the outcome of the action. *See, Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Of the various exceptions to the rule, judge made and statutory, we are concerned with the Federal Rule of Civil Procedure 11 ("Rule 11") and its Bankruptcy analog, Bankruptcy Rule 9011.

Bankruptcy Rule 9011 and Rule 11 were revised in 1983. Bankruptcy Rule 9011 traces the relevant language of Rule 11 almost identically and provides in pertinent part:

"The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument

for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction ..., including a reasonable attorney's fee."

Under Rule 9011, then, the signatures of Jeffrey Levine and Norman Klasfeld, Esq. on the Chapter 11 petitions, and of the Kaye Scholer firm on the papers submitted in opposition to the motion to dismiss, must have constituted a "certificate" that (1) to the best of their knowledge, information and belief "formed after reasonable inquiry" the filings were well grounded in fact and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law", and (2) that the cases were not filed and the opposition papers not "interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation."

Movants contend that this Court's finding of bad faith in the filing of these Chapter 11 cases *"a fortiori* compels" the conclusion that both prongs of Bankruptcy Rule 9011—the "existing law or good faith argument" prong and the "improper purpose" prong—have been violated. Movants also make the bolder assertion that any bad faith filing is a *per se* violation of Bankruptcy Rule 9011. As we explain below, both of these arguments are flawed for related reasons stemming from a misunderstanding of a Rule 9011 inquiry.

Since Movants rely on the Rule's two warranties, we address each separately.

### A. *"Warranted By Existing Law or a Good Faith Argument"*

In *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2nd Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the Second

Circuit examined revised Rule 11[1] and in framing its objective standard, the Court set out certain guidelines for the Rule's application. Mindful of the potential severe chilling effect this objective standard and the related requirement of sanctions could have on legal creativity and effective client representation, the Second Circuit counseled courts to "strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed," and urged that "any and all doubts must be resolved in favor of the signer." *Eastway, supra.,* 762 F.2d at 254. The Second Circuit reiterated this admonition in *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) and *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469–70 (2d Cir.1988). *Accord, Two Star Surgical Supply Inc. v. New York State Department of Social Services (In re Two Star Surgical Supply, Inc.),* 92 B.R. 26, 29 (E.D.N.Y.1988). Thus, the Second Circuit held that only "where it is *patently clear* that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated." *Eastway, supra.,* 762 F.2d at 254 [Emphasis Added]. What we glean from the Second Circuit's teaching is that a legal position is unwarranted by law only where, after reasonable inquiry, an attorney would recognize that it is patently clear that the position has absolutely no chance of success. More simply put, if there is even modest difficulty in resolving the merits of the challenged legal position, then the Rule 11 certification has been satisfied. Heeding the advice of the Sec-

ond Circuit, we cannot find that the first prong of Rule 9011 has been violated.

As a prelude to their main argument in opposition to the dismissal motion, the former Debtors reminded the Court that the Bankruptcy Code lacks an express requirement of good faith in the filing of a Chapter 11 petition. Preliminarily, we simply observe that it seems less than "patently clear" that these Chapter 11 cases did not satisfy the good faith requirement when there is no "patent" good faith requirement. We did determine that a good faith requirement should be read into the non-exclusive list of causes for dismissal under 11 U.S.C. § 1112(b). This holding, however, does not provide support to Movants on their sanctions claim. We held only that a good faith requirement is implicit in the filing of a Chapter 11 petition; we did not hold that there is no good faith argument for the absence of such a requirement. *See,* Haines, *Good Faith: An Idea Whose Time Has Come And Gone,* Norton Bankruptcy Law Adviser, April 1988, at 1–8; M. Bienenstock, *Bankruptcy Reorganizations,* 28–39 (1987).

It is the unique, complex fact pattern of these filings, though, that severely weakens Movants' claim that the filings, and the subsequent defense of the dismissal motion constituted a violation of Bankruptcy Rule 9011's first warranty. We cannot find that these particular Chapter 11 cases so perfectly paralleled the prototypical bad faith fact patterns that their filing and subsequent defense mandates sanctions under Bankruptcy Rule 9011. These bad faith filings were not clones of the most common bad faith filing, of the type known as "the new debtor syndrome".[2] In the new debtor

---

1. Prior to 1983, both Rule 11 and its then bankruptcy analog Bankruptcy Rule 911 called for a finding of subjective bad faith. The addition of the language "formed after a reasonable inquiry" now requires an attorney whose conduct is questioned under Rule 11 and Bankruptcy Rule 9011 to meet an objective standard.

2. *See, generally, Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Company, Inc.),* 779 F.2d 1068, 1073 (5th Cir.1986); *Sundstrom Mortgage Co., Inc. v. 2218 Bluebird Limited Partnership (In re 2218 Bluebird Limited Partnership),* 41 B.R.

540 (Bkrtcy.S.D.Cal.1984); *California Mortgage Service v. Yukon Enterprises, Inc. (In re Yukon Enterprises, Inc.),* 39 B.R. 919 (Bkrtcy.C.D.1984); *In re Herndon Executive Center, Inc.,* 36 B.R. 803 (Bkrtcy M.D.Fla.1984); *Glassmanor Apartments Limited Partnership v. Corporation Deja Vu (In re Corporation Deja Vu),* 34 B.R. 845 (Bkrtcy.D. Md.1983); *Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.),* 30 B.R. 503 (B.A.P. 9th Cir.1983); *Duggan v. Highland–First Avenue Corp.,* 25 B.R. 955 (Bkrtcy.C.D.Cal.1982); *In re FJD, Inc.,* 24 B.R. 138 (Bkrtcy.D.Nev.1982); *Polkin, Inc. v. Lotus*

syndrome cases, the debtor is a newly formed entity, created solely for the purpose of seeking the bankruptcy protection. Typically, assets are transferred to the new debtor, on the eve of bankruptcy, in order to insulate the assets and forestall an imminent foreclosure. Nor were these filings similar to other oft-recurring bad faith filings, invariably initiated on the eve of a real estate lienholder's exercise of its remedies and sometimes in the context of multiple bankruptcy petitions for the same debtor.

Moreover, we cannot find that the case law in this area of improper Chapter 11 filings is so settled or uniform so as to enable us to conclude that there was no good faith argument to be made in defense of these Chapter 11 filings. *See, e.g., In re Clinton Centrifuge, Inc.,* 72 B.R. 900 (Bkrtcy.E.D.Pa.1987); *In re Bible Speaks, Inc.,* 65 B.R. 415 (Bkrtcy.D.Ma.1986); *In re Johns–Manville Corp.,* 36 B.R. 727, 735–37 (Bkrtcy.S.D.N.Y.), *mandamus petition denied sub. nom., In re Committee of Asbestos–Related Litigants,* 749 F.2d 3 (2d Cir. 1984). The thrust of the Debtors' main argument in opposition to the dismissal motion was that so long as a debtor is motivated by an "honest intention" to reorganize, and not solely by a desire to hinder creditors or prevent a foreclosure, a strategic filing of a Chapter 11 petition in a two party dispute does not constitute a bad faith filing. As authority for this proposition they cited *In re Clinton Centrifuge, Inc., supra.,* and *In re The Bible Speaks, Inc., supra.* They also referenced *In re Johns–Manville Corp., supra.,* for its broad language regarding the Bankruptcy Code's policy of "open access" to the reorganization process.

Though both *Bible Speaks* and *Clinton Centrifuge* were factually distinguishable from these Chapter 11 cases, we did not rest on these distinctions. We held that in resolving a "good faith filing" issue, courts must conduct an examination of a "conglomerate of factors" emblematic of bad faith, i.e., an objective evaluation of all the

circumstances surrounding the filing rather than an inquiry into the subjective intent of the petitioner. *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.), supra.,* 779 F.2d at 1072. A subjective intent type of inquiry, we determined, seems specious since every Chapter 11 petitioner purports to have an honest intention to reorganize. Thus, we pointed out, that insofar as *Clinton Centrifuge* and *Bible Speaks* attach undue credence to a Chapter 11 petitioner's subjective intent so as to effectively undermine the good faith requirement, we disagree with those decisions. We held that considering the badges of bad faith present in these cases, a more reasoned interpretation of the Bankruptcy Code's policy of "open access" would not allow unbridled entitlement to the benefits of the process without an initial satisfaction of its jurisdictional requirements.

Here again our holdings are not helpful to Movants in their request for sanctions. Given the very broad, sweeping language of cases like *Clinton Centrifuge* and *Bible Speaks* and the emphasis of the *Manville* court on "open access" to Chapter 11, we can only find that the former Debtors made a good faith, though ultimately flawed argument, for the propriety of their Chapter 11 filings. We could not hold otherwise. Indeed, a holding otherwise would run counter to the Second Circuit's repeated admonition that courts guard against chilling client representation and creativity in the law.

B. *"Improper Purpose"*

Unlike the first prong of Rule 11 dealing with substantive law, the second prong addresses the purpose for interposing the particular documents under scrutiny. Under the second prong, the signer represents that the document filed "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The

*Investments, Inc.,* 16 B.R. 592 (Bkrtcy.S.D.Fla. 1981); *In re Eden Associates,* 13 B.R. 578

(Bkrtcy.S.D.N.Y.1981).

question arises as to what relationship, if any, exists between the two prongs. If the document filed is found to be warranted by existing law or a good faith argument for its extension, modification or reversal, can it be said to have been interposed for an improper purpose?

██ The text of Rule 11 does not provide a clear answer. Its two prongs are coupled by the conjunction "and", at least suggesting that each prong is to be analyzed independently. However, though the Second Circuit has not yet addressed this question, at least three other Circuits and a pioneering authority on Rule 11 have confronted this issue and found a corollary relationship to exist between the two warranties. A finding that the first warranty has not been violated generally compels the conclusion that the second warranty has not been violated. *Jennings v. Joshua Independent School District*, 877 F.2d 313, 320, 1989 U.S.App. LEXIS 4905, 21 (5th Cir.1989); *National Association of Government Employees, Inc. v. National Federation of Federal Employees*, 844 F.2d 216, 223-4 (5th Cir.1988); *Burkhart Through Meeks v. Kinsley Bank*, 852 F.2d 512, 514-15 (10th Cir.1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986); W. Schwarzer, *Sanctions Under the New Federal Rule 11*, 104 F.R.D. 181, 196 (1985).

We subscribe to the general rule that under most circumstances a nonfrivolous document cannot be said to have been filed for an improper purpose.[3] While it is true that the first prong of Rule 11 entails an inquiry into objective matters, *Eastway, supra; Oliveri, supra;* and the second prong addresses the apparently subjective matter of "purpose", *Smith International Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1201 n. 5 (5th Cir.1988), the two inquiries nonetheless turn on generally similar evidence. As the Fifth Circuit reasoned:

---

**3.** It is unlikely, but conceivable, that a document well-grounded in fact and law may be filed for an improper purpose. The filing of excessive motions, for example, though each may be "well-grounded", under certain circum-

" 'If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate.' Amended Rule 11 mandates the court to focus on objective circumstances in determining whether an attorney has conducted 'reasonable inquiry' and a paper is 'well grounded' in fact and law, and purely subjective elements should not be reintroduced into the determination concerning 'improper purpose.' "

*National Association of Government Employees Inc., supra*, 844 F.2d at 224, quoting, Schwarzer, *supra*, 104 F.R.D. at 195-96. Hence, having concluded that the first prong of Bankruptcy Rule 9011 was not violated in this case, we also conclude that the second prong too was not violated.

That the documents in question did not violate Rule 9011 is further attested to by the fact that JEA first moved for sanctions only after issuance of the Decision on the dismissal motion. Indeed, in an effort to bolster their sanctions request, the Movants, both in oral argument and in their motion papers, have quoted at length the rather strong language of the Court contained in the dismissal Decision.

Several authorities have advised that the decision to move for sanctions "is best made as promptly as possible after the violation is disclosed." Schwarzer, *supra*, 104 F.R.D. at 197. *Accord, Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3rd Cir.1988). One sound reason for the recommended promptness is to avoid "the risk or the appearances of relying on hindsight," Schwarzer, *supra*, 104 F.R.D. at 197, that "must constantly be guarded against." *Eastway Construction Corp. v. The City of New York*, 637 F.Supp. 558, 568 (E.D.N.Y.1986), modified on other grounds and remanded, 821 F.2d 121 (2nd Cir.1987).

Movant's reliance on the Court's forcible language in the dismissal Decision is improper. As Judge Weinstein so wisely ob-

---

stances, could constitute "harassment" sanctionable under the Rule. *National Association of Government Employees, Inc., supra*, 844 F.2d at 224; *Zaldivar, supra.*, 780 F.2d at 832 n. 10.

served, "Judicial opinion-writing style is well-known; after the judge equivocates in chambers and cogitates, with the decision wavering in the balance, the opinion is written in an adversarial fashion as if the court never had been dubitante and the outcome was always inevitable. This is deemed necessary, perhaps, on the theory that the law must seem certain to be respected." *Eastway, supra,* 637 F.Supp. at 568–9.

 In light of our discussion of this case, analysis of Rule 11 and the determination not to impose sanctions, JEA's argument for a *per se* sanctioning of all bad faith dismissal cases falls of its own weight. "The standards for dismissing a case under § 1112(b) are different from the standards used to impose sanctions under Bankruptcy Rule 9011. Such a *per se* rule for the imposition of sanctions is inappropriate, particularly in an area of bankruptcy practice which is rapidly developing (i.e., bad faith filings)." *In re Southern California Sound Systems Inc.,* 69 B.R. 893, 901 (Bkrtcy.S.D.Cal.1987).

The Bankruptcy Code itself provides some support for the rejection of a *per se* sanction rule. 11 U.S.C. § 303(i) permits the court to award costs, reasonable attorney's fees, compensatory damages and punitive damages if an involuntary petition is dismissed for having been filed in bad faith by the petitioners. Significantly, this provision is discretionary, providing that the court "may" grant judgment for any or all of this relief upon the dismissal for bad faith. The Bankruptcy Code's rejection of a *per se* sanction rule in the context of improperly invoking bankruptcy jurisdiction through bad faith involuntary filings would seem to suggest that such an inflexible rule would be inappropriate for voluntary filings found not to have been filed in good faith.

### ORDER

Based on all the foregoing, it is

HEREBY ORDERED, ADJUDGED AND DECREED THAT JEA's motion for sanctions pursuant to Bankruptcy Rule 9011 be, and hereby is, denied.