**In re Richard W. DUNN, Darlene R. Dunn, Debtors.**

No. 03–12552.

United States Bankruptcy Court, S.D. Ohio, Western Division.

June 8, 2004.

162

Jerry Wild, Cincinnati, OH, for Debtors.

## MEMORANDUM OF DECISION ON MOTIONS FOR CONTEMPT AND SANCTIONS

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court on two motions for contempt and sanctions filed by Thomas J. Geygan, Sr., the chapter 7 trustee ("Trustee"). The Trustee filed one motion (Doc. 48) against the Debtors ("Debtor Motion") and another motion (Doc. 47) against attorney Bruce L. Greenberger and the law firm of Macey, Chern & Diab ("MCD Motion"), counsel for the Debtors. By his motions, the Trustee seeks sanctions related to the Debtors' refusal to turn over property of the estate upon demand. In particular, the Trustee contends that the Debtors and their counsel should be sanctioned pursuant to Fed. R. Bankr.P. 9011 for filing frivolous pleadings in response to his turnover motion. Because the Debtors' attorneys advanced an unwarranted legal position in two separate pleadings, the MCD Motion will be **GRANTED** and the Debtor Motion will be **DENIED**.

### FACTS

As of the filing of the petition, the Debtors' schedules reflected: (1) Richard Dunn's ownership of a 1998 Ford F150 valued at $6,000; and (2) a lien on the vehicle securing a $3,000 claim in favor of Ford Motor Credit ("Ford"). Pursuant to an amended Schedule C, the Debtors claimed a $1,000 exemption on the vehicle.

A representative of Ford attended the meeting of creditors held on June 25, 2003. The Ford representative advised the Trustee that the outstanding balance on Ford's claim was $2,448. Later that same day the Trustee inspected the vehicle. Based upon the NADA value, the Trustee believed that the vehicle could be worth as much as $7400.

The Trustee mailed a June 25, 2003 letter to counsel, making an offer to compromise his interest in the vehicle. Hearing no response, the Trustee mailed a July 2, 2003 letter requesting turnover of the vehicle. On July 8, 2003, the Trustee received a telephone message from counsel, presenting a counteroffer for $2,500. The Trustee immediately sent another letter to counsel, rejecting the counteroffer and requesting turnover. On July 23, 2003, counsel informed the Trustee that the Debtors intended to fight turnover because the resulting dividend to unsecured creditors would be inconsequential.

On July 24, 2003, the Trustee filed and served a motion for turnover ("Turnover Motion") (Doc. 24). The Debtors filed a response ("Turnover Response") (Doc. 27), whereby they: (1) disputed the Trustee's valuation; (2) attached their own appraisal, reflecting that the vehicle was worth "up to $6,000"; (3) asserted that turnover "would not substantially affect the creditors in this matter"; and (4) "ask[ed] the Court to be permitted to retain possession of the [vehicle] during the pendency of this action as the debtor/husband needs this vehicle as the parties are now separated and it is his only transportation[.]"

In addition to the Turnover Response, the Debtors filed a motion to compel abandonment (Doc. 30) ("Abandonment Motion"). The Abandonment Motion states:

[A]fter all Trustee fees, attorney fees and cost of sale, no significant amount will remain which will be applied to the unsecured debt. After all of these costs stated, the amount left for unsecured creditors will be approximately $1,300.00, with the total unsecured debt in the amount of $47,975.00. Therefore, less than 3% of the unsecured debt will be paid. This seems to be an unnecessary sale of a vehicle in order to produce

an insignificant pay out to the unsecured debt.

A hearing on the Turnover Motion was held on September 22, 2003. At the hearing, Mr. Greenberger made the following statements:

> Our concern wasn't that Mr. Geygan wasn't entitled to ... some equity in the vehicle. We just disagreed with the valuation he was using.
>
> . . . .
>
> I have even today checked Kelly Blue Book and found that the valuation today though would be $7,000.
>
> . . . .
>
> At this point we would be happy to turn the vehicle over and get it over with at this point based on what we've heard here in court today.

Based upon the foregoing, the Court entered an order (Doc. 35) granting the Turnover Motion and thus mooting the Abandonment Motion. Thereafter, the Trustee filed the instant motions presently before the Court.

### LAW

■ Rule 9011 sanctions are appropriate if a pleading is not "warranted by existing law or a good faith argument for the extension or modification, or reversal of existing law." *In re Downs*, 103 F.3d 472, 481 (6th Cir.1996). Courts have concluded that a legal position is unwarranted-under Rule 9011-only if it has no chance of success under existing precedent. *In re Tamojira, Inc.*, 197 B.R. 815, 820 (Bankr.E.D.Va.1995); *In re HBA*

*East, Inc.*, 101 B.R. 411, 415 (Bankr. E.D.N.Y.1989). Thus, the issue before the Court is whether the Turnover Response and the Abandonment Motion had any chance of success under controlling precedent.

■ The concepts of turnover and abandonment work in a complementary manner.[1] In the Sixth Circuit, "[a]n order compelling abandonment is the exception, not the rule." *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987). "Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." *Id.*

The case of *In re Sowers*, 97 B.R. 480 (Bankr.N.D.Ind.1989) bears significant similarity to the facts of this case. In *Sowers*, the debtor was scheduled to receive a lump sum payment from a 401(k) plan upon separation from her employer. Six weeks after the separation, the debtor filed a chapter 7 petition and the trustee requested turnover of the funds. Counsel for the debtor conceded that the funds constituted estate property but nonetheless required the trustee to commence an action for turnover because, among other reasons, the funds would not provide a meaningful distribution to creditors. When the trustee filed a complaint for turnover, counsel for the debtor-notwithstanding his prior concession-opposed the relief on the basis that the funds were not property of the estate. The court ruled in the trustee's favor. Thereafter, the trustee filed a motion for sanctions against the debtor and counsel.

---

1. Turnover is governed by 11 U.S.C. § 542(a), which provides in material part:

> [A]n entity ... in possession ... of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee ... such property ... unless such property is of inconsequential value or benefit to the estate.

Abandonment is governed by 11 U.S.C. § 554(b), which provides in material part:

> On request of a party in interest ... the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

Finding no basis in law or fact for the debtor's opposition, the court sanctioned counsel pursuant to Fed. R. Bankr.P. 9011. The court stated:

> It should be emphasized that the relationship between a trustee and a debtor is not supposed to be adversarial. The duties imposed by § 521 are affirmative obligations. A trustee is not required to play detective or to chase the debtors into court to gain their cooperation. Indeed, the concept of cooperation with and surrender to the trustee connote the need for willing assistance....
>
> In this instance, because of counsel's attitude, he transformed what should have been an amicable and cooperati[ve] relationship into an adversarial one.... As a result, the Trustee's administration of the bankruptcy estate and fulfillment of her obligations under the Bankruptcy Code has needlessly become more time consuming, difficult, and expensive than it should have been.

*Sowers*, 97 B.R. at 487. Under these circumstances, the court concluded that only the attorney should be sanctioned and not the client. *Id.* at 484. Pursuant to Rule 9011, counsel for the debtor was required to: (1) pay all of the trustee's fees and expenses incurred subsequent to the filing of the baseless pleading; and (2) pay into the court the attorney fee he received for his services in connection with the case.[2]

## ANALYSIS

■■ In the Turnover Response, the Abandonment Motion and the hearing on the Turnover Response, not once did the Debtors and their counsel contend that the cost of administering the vehicle would yield nothing for the estate. To the contrary, both the Turnover Response and the Abandonment Motion concede that liquidation of the vehicle would generate net proceeds for the estate. Instead of applying the *K.C. Machine* standard, the Debtors' pleadings are based upon the argument that their position is justified if the net proceeds would satisfy only a small percentage of the total unsecured claims.[3] Consequently, the Court concludes that both the Turnover Response and the Abandonment Motion violate Rule 9011. Under these circumstances, however, the Court agrees with *Sowers* that the Debtors should not be sanctioned for the unwarranted legal position advanced by their attorneys.

■■ As evidence of his damages, the Trustee submitted his time records related to his efforts to obtain turnover of the vehicle. *See* MCD Motion at Ex. A. The records begin with the June 25, 2003 letter offer to compromise. Because the Trustee seeks relief under Rule 9011 only, sanctions for fees prior to the filing of the unwarranted pleadings are inappropriate. *See Sowers*, 97 B.R. at 487 (Rule 9011 violation does not occur until the offending paper is filed and there can be no Rule 9011 sanctions for time spent prior to that point). The Turnover Response was filed on August 6, 2003. The Abandonment Motion was filed on September 15, 2003.

---

**2.** Pursuant to 28 U.S.C. § 1927, the *Sowers* court also awarded the trustee the fees and expenses she incurred in preparing and litigating the turnover motion up to the filing of the debtor's response that violated Rule 9011. In the instant case, the Trustee did not assert § 1927 as a basis for relief.

**3.** This position is troublesome in at least two regards. First, it ignores the benefit to administrative and other priority claimants. Second, as was the case in this proceeding, the trustee is likely to seek turnover well in advance of the claims bar date. The Debtors' approach would enable debtors to hold off a trustee until the expiration of the bar date while the asset in question is likely depreciating with each passing day.

Subsequent to the filing of these pleadings, the Trustee incurred legal expenses in the amount of $2,290.[4] After reviewing the itemized description for each legal service performed, the Court concludes that there is nothing unreasonable about the Trustee's legal expenses.

Pursuant to the MCD Motion, the Trustee also seeks the additional sanction of disgorgement of attorney's fees earned by counsel for the Debtors in this case. The Disclosure of Compensation and the Statement of Financial Affairs reflect that the Debtors paid their attorneys $800 for their services. *See* Doc. 1. Like the *Sowers* court, this Court believes that disgorgement is appropriate to fulfill the deterrent purposes of Rule 9011. *See Sowers,* 97 B.R. at 488–89.

### CONCLUSION

For the foregoing reasons, the MCD Motion will be **GRANTED** and the Debtor Motion will be **DENIED.** A $2,290.00 judgment shall be entered against Bruce L. Greenberger and the law firm of Macey, Chern & Diab, jointly and severally[5], in favor of the Trustee, Thomas J. Geygan, Sr. Additionally, Macey, Chern & Diab shall be directed to pay its $800.00 attorney fee to the Clerk of Court and file a certification to this effect.

---

**4.** This figure is derived as follows:

**5.** Fed. R. Bankr.P. 9011(c)(1)(A) provides: "Absent exceptional circumstances, a law firm shall be held jointly responsible for viola- tions committed by its partners, associates, and employees."