In re LOGUE MECHANICAL CONTRACTING CORP., Debtor.

COMMITTEE OF UNSECURED CREDITORS, Movant,

v.

Arthur H. LOGUE, Respondent.

COMMITTEE OF UNSECURED CREDITORS, Plaintiff,

v.

William LOGUE, Arthur H. Logue, and Helen M. Logue, His Wife, Defendants.

Bankruptcy No. 86–00085 PGH.
Motion No. 86–5984.
Adv. No. 86–612.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 9, 1989.

Jeffrey T. Morris, Robert J. Blumling, Pittsburgh, Pa., for debtor.

Mark L. Glosser, Pittsburgh, Pa., for Committee of Unsecured Creditors.

Joseph F. McDonough, Pittsburgh, Pa., for William Logue, Arthur Logue and Helen Logue.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

The debtor, Logue Mechanical Contracting Corp. ("Corporation") filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 9, 1986. Arthur H. Logue was the controlling shareholder in the Corporation and served as the Corporation's Chairman of the Board of Directors and President. William M. Logue, Arthur's son, and the only other shareholder, served as the Corporation's Vice–President. Helen M. Logue served as Secretary/Treasurer and Director of the Corporation.

This matter is before the court for decision following an evidentiary hearing on the Committee of Unsecured Creditors' ("Committee") Motion objecting to the claim of Arthur M. Logue and the Committee's adversary proceeding filed with the court's permission on behalf of the Corporation against its principals seeking recovery of improper and unauthorized transfers.

### Objection to Claim of Arthur H. Logue

Arthur Logue filed a proof of claim for unpaid salaries for years ending August 31, 1978, 1980, 1981, 1982, 1983, 1984 and 1985 in the total amount of $171,064 and for a balance due on three demand loans, in the amount of $70,000, $11,600 and $3,000, made on April 1, 1984, May 1, 1984 and July 22, 1984 respectively.

Corporate resolutions of the debtor discuss payment of back salary as follows:

WHEREAS, Arthur H. Logue has agreed that the corporation may pay the back salary due him when it can afford to do so.

BE IT RESOLVED, [unpaid salary] shall carry no interest and shall be paid only and when the financial status of the corporation improves.

■ The corporate resolutions represent an agreement between Arthur H. Logue and the Corporation that back salaries would be paid only if the Corporation could afford to do so. The Corporation's financial condition has deteriorated and it cannot afford to pay back salaries. Therefore, Arthur Logue's claim for back salaries must be denied.

Arthur Logue's claim for the balance due on demand loans requires a more detailed analysis. The Committee asserts that Arthur Logue's claim resulting from the loans should be denied or subordinated to the claims of other creditors on the basis of equitable subordination.

■ A corporation is generally an entity separate and distinct from its shareholders. *In re Erie Drug Co.,* 416 Pa. 41, 204 A.2d 256 (1964); *Zubik v. Zubik,* 384 F.2d 267 (3rd Cir.1967). "[A] shareholder who in good faith advances money to a corporation for the corporation's benefit is not necessarily precluded from sharing in the distribution of assets upon the same terms as other unsecured creditors." *Erie Drug,* (citations omitted). However, the conduct of claimants who are "insiders" is subject to a high level scrutiny by the court when the issue of subordination is raised. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). As a director and officer of the Corporation, Arthur Logue is an "insider." 11 U.S.C. § 101(30)(B).

Statutory authority for equitable subordination is provided by 11 U.S.C. § 510(c) which states:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing the court may—

(1) under the principles of equitable subordination, subordinate for purposes of distribution, all or part of an allowed claim or all or part of an allowed interest . . .

■ Interpretation of this section by the courts has resulted in a tripartite test. The three elements of equitable subordination are:

(1) The claimant must have engaged in some type of inequitable conduct.

(2) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(3) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir.1986); *In re Multiponics*, 622 F.2d 709 (5th Cir.1980); *In re Dan–Ver Enterprises, Inc.*, 86 B.R. 443 (Bankr.W.D. Pa.1988); *In re Purco*, 76 B.R. 523 (Bankr. W.D.Pa.1987).

■ Undercapitalization is a basis for subordination where the claimant is a director, shareholder, or other insider. *Dan–Ver*, 86 B.R. at 448. "Creditors and shareholders assume different risks and receive different rewards. When a corporation is undercapitalized, a shareholder must not be permitted to call his capital contribution a loan, in order to reduce the risk of loss." *Dan–Ver*, 86 B.R. at 450–51 *citing In re McFarlin's Inc.*, 49 B.R. 550 (Bankr.W.D. N.Y.1985).

Shareholder loans may be deemed capital contributions in one of two circumstances: where a corporation is initially undercapitalized or where the loans were made when no other disinterested lender would have extended credit. *In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir.1986); *In re Multiponics*, 622 F.2d 709 (5th Cir.1980); *In re Trimble*, 479 F.2d 103 (3rd Cir.1973).

The Corporation was formed in 1977; it was capitalized at $2,000. As stated in the Corporation's financial statement for fiscal year ending August 31, 1978:

"Company was incorporated in Pennsylvania and officially began operations on September 1, 1977 with active, incomplete contracts acquired from L & H Plumbing and Heating Company. Capital stock issued as of August 31, 1978 totalled 200 common shares, par value $10.00 per share."

In addition to initial capital of $2,000, the Corporation acquired the existing contracts from Arthur Logue's pre-existing business. Financial statements of the Corporation reflect a solvent and profitable operation for several years following incorporation.

In light of the acquisition of existing contracts at the time of incorporation and the subsequent period of profitability, it cannot be found that the Corporation was undercapitalized at its inception.

The balance sheet and profit and loss statement for the fiscal year ending August 31, 1983 show that retained earnings at the beginning of the fiscal year 1983 were $66,746 and that the retained earnings declined to $8,870 at the end of the fiscal year. There was a decrease in working capital in 1983 of $77,383 and a loss in the year 1983 of $55,876.

Corporate resolutions document the issuance of demand notes to Arthur Logue for loans dated in April, May and July, 1984. In addition, cancelled checks reflecting the loans by Arthur Logue were introduced into evidence. Arthur Logue made loans to the Corporation as a separate entity, not as an "alter ego" of himself. Correct procedures and formalities were followed.

Although the Corporation had suffered losses, it maintained a positive net worth at the end of the last fiscal year prior to Arthur Logue's loans to the Corporation. There is no evidence that the Corporation could not have borrowed a similar amount of money from other sources at the time the loans were made by Arthur Logue. The financial report of the Corporation for fiscal year ending August 31, 1984 reflects a continued deterioration in the financial condition of the Corporation.

"One of the primary functions of bankruptcy is to provide a fair and organized distribution of the estate assets to creditors. If insiders have misused the debtor,

preferring themselves over others, and have created for themselves an unfair advantage, then the principals of fairness would be violated by permitting the insider to partake of the distribution in equal share with the other creditors." *Dan–Ver*, 86 B.R. at 448–49 *citing In re McFarlin's, supra.*

The loans here were real and genuine. Arthur Logue loaned money to the Corporation for the purpose of benefitting the Corporation. There is no evidence that the loans were made in the absence of good faith or that there was any fraud or improper purpose in the transactions. Arthur Logue had only demand notes and no other security. Logue was not provided an automatic priority for these loans. Arthur Logue created no unfair advantage for himself.

Equitable subordination of Arthur Logue's loan claim is not required. Classification of the advances as debt is fair and equitable. Sharing in any distribution equally with other creditors does not give Arthur Logue an unfair advantage.

Arthur Logue's claim in the amount of $88,832.90 for the balance on loans made to the Corporation will therefore be allowed as an unsecured claim.

### Recovery of Unauthorized and Inappropriate Transfers

When the Corporation filed its Chapter 11 petition, it had no secured or priority debts and had $147,572.30 on deposit in the bank. This amount declined by $110,386.71 during the nine month Chapter 11 proceedings to $37,186.59. When the Corporation filed its Chapter 11 petition, it was actively working on only two jobs. Both of these jobs were rejected immediately after the Chapter 11 petition was filed as the Corporation was losing money on them.

In January and February, 1986, the Corporation bid two other jobs. It obtained neither job and had no further activity except for two other bids made in May, 1986.

During the nine month Chapter 11 proceedings, the Corporation did not get one job. However, the Corporation continued to incur overhead. Substantial payments were made to Arthur and William Logue in the form of wages, benefits and rent despite the lack of business activity.

The Committee seeks a judgment against the principals of the Corporation in such amount as will restore the Corporation's cash balances to the balance that existed at the date of filing of the Chapter 11 debtor.

Arthur and William Logue assert that the decision to pursue reorganization of the Corporation is a business decision judged by the "business judgment rule" and that the payments of salary and rents were in exchange for valuable services rendered to the Corporation.

William Logue asserts that he maintained, protected and inventoried equipment, looked for buyers for the company, began liquidation efforts, and conducted claims analysis. Arthur Logue claims to have sought jobs and attempted to find buyers for the company, and completed administrative duties.

Under Pennsylvania law, directors, officers and controlling shareholders stand in a fiduciary relationship to the Corporation and stockholders and creditors of the Corporation. *In re Simplified Information Systems, Inc.*, 89 B.R. 538 (W.D.Pa.1988); *In re Complete Drywall Contracting, Inc.*, 11 B.R. 697 (Bankr.E.D.Pa.1981). Directors and officers may be held liable for losses suffered by the Corporation as a result of their failure to use reasonable and ordinary skill, care and diligence in the conduct of corporate business. *Simplified Information Systems*, 89 B.R. at 545. In discharging their fiduciary duties, directors and officers are protected against unwarranted interference with their decisions by the "business judgment rule." *Enterra Corp. v. SGS Associates*, 600 F.Supp. 678, 684 (E.D.Pa.1985). However, the business judgment rule does not apply in the face of bad faith or dealing in self-interests.

The following is a summary of the information contained in the Corporation's monthly operating schedules:

|  | Income | Expenses | End of Month Cash Balances |
|---|---|---|---|
| January 9, 1986 (beginning balance in DIP acct.) | | | $147,572.30 |
| January 1986 | $9,540.29 | $24,944.77 | 132,167.82 |
| February 1986 | 585.48 | 19,619.63 | 113,133.67 |
| March 1986 | 0 | 16,581.74 | 96,551.93 |
| April 1986 | 0 | 19,264.19 | 77,287.74 |
| May 1986 | 0 | 11,795.90 | 65,491.84 |
| June 1986 | 1,349.56 | 12,043.96 | 54,797.44 |
| July 1986 | 0 | 9,042.28 | 45,755.16 |
| August 1986 | 6,164.84 | 9,682.49 | 42,389.01 |
| September 1986 | 0 | 5,202.42 | 37,186.59 |

■ Despite the lack of business operations and in many months absolutely no income, the Logues unnecessarily caused the Corporation to remain in business and incur substantial overhead and operating expenses, all of which caused the Corporation's cash balance to decline by over $110,000 in the nine month period from January 1986 through September 1986. The majority of the overhead and operating expenses of the Corporation inured to the benefit of the Logues.

Continued operation benefitted only the Logues to the detriment of the Corporation and its creditors. Evidence clearly shows that almost immediately after the filing of the petition, the Corporation ceased all operations and had no hope of reorganizing. Yet, the Logues, as the Corporation's stockholders, officers and directors elected to continue operations and receive payments in the form of salaries and rents in furtherance of their self-interests.

The Corporation incurred over $110,000 in costs during the Chapter 11 proceeding. The Logues suggest that continued operation of the business was justified because it enabled the Corporation to sell its assets for the highest and best price. The assets eventually sold for approximately $45,000. The same price likely could have been obtained by an auctioneer much earlier in the case and eliminated the need for storage and rental payments. In any event, the incurrence of $110,000 in expenses to sell assets valued at $45,000 makes no sense and is not justifiable. No benefit was conferred to the Corporation by the Logues' services in assisting to sell the assets.

Likewise, the Logues' services in attempting to obtain jobs rendered no value to the Corporation. Four bids were made and no jobs were obtained. The minimal activities performed by the Logues do not justify the expense incurred in the continued operation of the Corporation.

The Logues further claim the ongoing Chapter 11 proceeding was justified by the fact that the principals of the Corporation assisted in collecting receivables. This argument cannot bear close scrutiny. The monies received were refunds, accounts receivable, sales of inventory and for work completed prior to the Chapter 11 filing date. William Logue testified at trial that he would have helped a trustee collect these same receivables had the Corporation been in a Chapter 7 proceeding. It was totally unnecessary for the Corporation to incur added expense in attempting to collect its receivables.

We determine that the Logues violated their fiduciary obligation to the Corporation and its creditors. Their dealings with the Corporation cannot bear close scrutiny.

The evidence indicates that it was clear immediately after the filing that the Corporation could not reorganize. The Logues' counsel advised the court that within six weeks of filing, it had been determined to liquidate the Corporation. Why then did the Corporation continue to incur these expenses? We find that the Logues continued to operate the business solely for the

benefit of receiving salaries, benefits and rents. A reasonable person using ordinary skill, care and diligence would have immediately ceased operations and proceeded to liquidate the business to maximize the return to creditors. This liquidation could have been accomplished by March 31.

We therefore hold that the Logues are liable for the decrease in cash balance from March 31, 1986 through September, 1986. The cash balance on March 31, 1986 was $96,551.93 and the balance as of September 30, 1986 was $37,186.59. The Logues will therefore reimburse the Corporation for the difference of $59,365.34. An appropriate order will be entered.

### ORDER

This 9th day of November, 1989, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED:

1. Arthur H. Logue's proof of claim as it relates to salary claims in the amount of $171,064 is DISALLOWED.

2. Arthur H. Logue's proof of claim as it relates to loans in the amount of $88,-832.90 is ALLOWED as an unsecured claim.

3. Arthur H. Logue, William M. Logue and Helen Logue are to reimburse Logue Mechanical Contracting Corp. the sum of $59,365.34 for inappropriate and unauthorized transfers.