**In re WHITNEY PLACE PARTNERS, a Georgia general partnership, Debtor.**

**WHITNEY APARTMENTS ASSOCIATES, Movant,**

v.

**Charlie N. McGLAMRY, Robert G. Lewis, Jr., and H. David Moore, Respondents.**

**Bankruptcy No. 89–03575.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 11, 1991.

Scott Norberg, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga. for movant.

Lewis E. Hassett, Atlanta, Ga., for respondents.

### CONTESTED MATTER

MARGARET H. MURPHY, Bankruptcy Judge.

### ORDER

This matter is before the court on Movant's motion for Bankruptcy Rule 9011 sanctions. Respondents oppose the motion. Hearing was held January 10, 1990, and was continued to and concluded February 9, 1990. Following the hearings, the parties filed briefs, response briefs and supplemental briefs. For the reasons set forth below, Movant's motion for sanctions is granted; sanctions pursuant to Bankruptcy Rule 9011 in the amount of $30,000 are awarded as reimbursement for attorney fees to Movant payable jointly by Debtor's general partners, Charlie N. McGlamry, Robert G. Lewis, Jr., and H. David Moore (collectively "Respondents"). Further consideration with respect to the liability of Debtor's attorney, Lewis Hassett, is addressed below.

Debtor's Chapter 11 petition was filed April 4, 1989. The petition was signed by Robert G. Lewis, one of Debtor's general partners, and by Lewis E. Hassett, attorney for Debtor. The Consent of General Partners to the filing of the petition was signed by each of the general partners, Charles N. McGlamry, Robert G. Lewis, and H. David Moore.

On October 3, 1989, an order was entered dismissing the above-referenced Chapter 11 case (the "Dismissal Order"). The Dismissal Order determined that Debtor filed its petition for an improper purpose and without a reasonable prospect for reorganization. Following dismissal, on November 1, 1989, Movant obtained appointment of a receiver to take possession, custody and control of Debtor's single asset, an apartment complex known as Whitney Place Apartments (the "Property"). Movant foreclosed the Property November 7, 1989.

After the receiver took possession of the Property and Movant foreclosed, Movant discovered that the occupancy rate of the Property had decreased from 45% at the time of the motion to dismiss to 18% in November, 1989. Additionally, the Property had further physically deteriorated. Garbage and trash had been allowed to accumulate for several months. The HVAC system had remained unrepaired and was largely inoperable; the apartment units had been without air conditioning during the summer of 1989 and were without heat when Movant took possession. The extent of the deterioration of the Property was unknown to Movant prior to the entry of the Dismissal Order primarily be-

cause Debtor's operating reports were incomplete, inaccurate and not always timely filed.

Movant's motion for sanctions was filed December 21, 1989, approximately two and one-half months after entry of the Dismissal Order. Movant requests imposition of sanctions in the amount of $45,000 for Movant's attorneys fees plus the amount by which the Property declined in value as a result of the decrease in occupancy and the deferred maintenance between the time Debtor's petition was filed and the time it was dismissed, $900,000.00.

Respondents oppose Movant's motion for sanctions on the following grounds:

(a) This court is without jurisdiction to consider the motion for Bankruptcy Rule 9011 sanctions because the motion was not filed until after dismissal;

(b) The motion for Bankruptcy Rule 9011 sanctions was not timely filed; and

(c) The motion for Bankruptcy Rule 9011 sanctions lacks substantive merit.

Respondents also argue that if sanctions are imposed they should be minimal: the attorney fees requested by Movant are unreasonable and the sanctions for the decrease in value is unsupported factually or legally.

■ Respondents' first contention is without merit. Respondents relied, in part, on the case of *Williams v. Ezell*, 531 F.2d 1261 (5th Cir.1976),[1] as binding precedent for the proposition that this court lacks jurisdiction to entertain a motion for Bankruptcy Rule 9011 sanctions after dismissal. It is unclear whether the motion for attorney fees under consideration in *Williams v. Ezell* was a Rule 11 motion. Additionally, the *Williams* decision did not specifically address whether a court may entertain a Rule 11 motion after a voluntary dismissal by a plaintiff. The *Williams* decision specifically dealt only with whether a plaintiff's voluntary dismissal can be denied if it is filed before service of an answer or motion for summary judgment, holding that it cannot.

Additionally, it would appear that the holding in the *Williams* case conflicts with the holding in *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), that a voluntary dismissal does not deprive a district court of jurisdiction over a Rule 11 motion, and *dicta* in *Gordon v. Heimann*, 715 F.2d 531 (11th Cir.1983), that a Rule 11 motion may be requested "at different times in the course of or after litigation." Accordingly, the dismissal of the above-styled case did not deprive this court of jurisdiction to hear a motion for Bankruptcy Rule 9011 sanctions.

■ With respect to Respondents' argument concerning the timeliness of Movant's motion, the parties presented no definitive case law on the issue of timing except a case in which the Eleventh Circuit refused to impose the Rule .59 ten-day limitation to a post-dismissal sanction proceeding. *Gordon v. Heimann*, 715 F.2d 531 (11th Cir. 1983). That case, a non-bankruptcy case, held that a motion for attorneys fees may be filed within a reasonable time after determination of the case.

Movant's motion was filed approximately two months after the entry of the Dismissal Order. Movant's decision to file a motion for sanctions may have been prompted by the post-dismissal revelation of the degree to which the Property had deteriorated, which was significantly greater than expected and than had been revealed in the hearings on Movant's motion to dismiss. The basis of Movant's decision to file the motion, however, does not negate the efficacy of the grounds upon which Debtor's bad faith filing is sanctionable. In filing the motion for sanctions, Movant's delay was not unreasonable; the delay, however, does dilute the potency of Movant's arguments in support of the harsh sanctions which it requests.

Respondents' arguments as to the substantive merit of Movant's motion for sanctions focused primarily on case law interpreting Rule 11 of the Federal Rule of Civil Procedure ("Rule 11"), which is certainly

---

**1.** *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), renders decisions of the Fifth Circuit issued prior to September 30, 1981, binding precedent for the Eleventh Circuit.

relevant in a Bankruptcy Rule 9011 proceeding. Rule 11 and Bankruptcy Rule 9011 are very similar and Rule 11 case law is often used interchangeably with Bankruptcy Rule 9011 case law.

The imposition of Bankruptcy Rule 9011 sanctions for the bad faith filing of a Chapter 11 petition presents a fact pattern, however, which is analogous to but not identical to the typical Rule 11 proceeding. Additionally, significant case law relating specifically to sanctions for bad faith bankruptcy filings exists. Such specific case law is more relevant to the instant case than Rule 11 case law. The propriety of imposing Bankruptcy Rule 9011 sanctions against debtors who file bankruptcy petitions in bad faith has been considered by numerous courts and virtually all the courts which have considered the question have concluded that such sanctions may be awarded.[2] *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985); *Blake, Barnett, Milman & Bell, Inc. v. Chalmers (In re Villa Madrid )*, 110 B.R. 919 (9th Cir.BAP 1990); *In re Eighty South Lake, Inc.*, 63 B.R. 501 (Bankr.C.D.Cal.1986), *aff'd*, 81 B.R. 580 (9th Cir.BAP 1987); *In re Epco Northeast, Inc.*, 118 B.R. 267 (Bankr. E.D.Penn.1990); *In re Cedar Falls Hotel Properties Limited Partnership*, 102 B.R. 1009 (Bankr.N.D.Iowa 1989); *First Federal Savings & Loan Association of Warner Robins v. Oakbrook Village, Inc.*, 108 B.R. 838 (Bankr.S.D.Ga.1989); *In re King*, 83 B.R. 843 (Bankr.M.D.Ga.1988); *In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*, 77 B.R. 909 (Bankr.M.D.Fla. 1987); *In re French Gardens, Ltd.*, 58 B.R. 959 (Bankr.S.D.Tex.1986); *Unifirst Bank for Savings, F.A. v. Park Timbers, Inc.*, 58 B.R. 647 (Bankr.D.Del.1985).

■ The filing of a Chapter 11 petition in bad faith is not *per se* sanctionable, however. *In re HBA East, Inc.*, 101 B.R.

411 (Bankr.E.D.N.Y.1989). The standard is not whether the petition was filed in bad faith but whether the debtors or their attorneys knew or should have known that the filing was in bad faith. *Villa Madrid*, 110 B.R. 919, 922. In the instant case, Respondents as Debtor's general partners knew or should have known they were filing Debtor's petition for the improper purpose of delay and without a reasonable prospect of reorganization. Filing a Chapter 11 petition supported only by the hope that some lender or purchaser may appear to fund a reorganization is unreasonable and subjects the debtor to sanctions. *French Gardens*, 58 B.R. 959. In the instant case, Respondents knew or should have known that neither a commercial lender nor government housing program would fund a plan of reorganization, as the value of the Property was less than half the existing lien debt of $6.8 million.[3]

■ Additionally, the focus of a determination of liability for sanctions is not only upon the initial petition but on all subsequent pleadings filed in the case. In the case of *In re Epco Northeast, Inc.*, 118 B.R. 267 (Bankr.E.D.Penn.1990), the court imposed sanctions upon the debtor, the debtor's president (who signed the petition), and on each of the attorneys who signed any pleading filed for the debtor during the pendency of the case. Such a position appears to conflict with the principle that Rule 11, and by analogy Bankruptcy Rule 9011, does not impose upon a party or its attorney a continuing obligation to amend or dismiss a proceeding if it "was reasonably interposed in the first place." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938 (11th Cir.1989). *See also, Endrex Investments, Inc. v. Mauna Lani Resort, Inc.*, 111 B.R. 939 (D.Col.1990).

---

**2.** Several courts have concluded that sanctions for bad faith filings are also available pursuant to 28 U.S.C. § 1927 and the court's inherent power to impose sanctions. *See, Endrex Investments, Inc. v. Mauna Lani Resort, Inc.*, 111 B.R. 939 (D.Col.1990); *In re French Gardens, Ltd.*, 58 B.R. 959 (Bankr.S.D.Tex.1986).

**3.** Appraisal testimony presented by Movant at the hearings held in May, 1989, on Movant's motion to dismiss set forth the value of the Property to be approximately $3 million. Debtor presented no expert appraisal testimony or other evidence of any other current value for the Property. Such issues are central to Chapter 11 proceedings.

In the instant case, however, the petition was filed initially in bad faith for an improper purpose. The circumstances which existed at the time of filing did not significantly change during the pendency of the case and, in fact, deteriorated such that the initial character of the filing became more apparent.

The factors to be considered in determining whether and in what manner to impose sanctions for a bad faith filing are (1) the expenses incurred by the creditor; (2) the debtor's familiarity with the bankruptcy process; (3) the dual purpose of Bankruptcy Rule 9011 to punish and deter; and (4) the severity of the violation. *In re King*, 83 B.R. 843 (Bankr.M.D.Ga. 1988). Additionally, the ability to pay is a proper consideration in determining the amount of sanctions. *In re Eighty South Lake, Inc.*, 63 B.R. 501 (Bankr.C.D.Cal. 1986).

In the instant case, Movant incurred substantial attorney fees occasioned by Debtor's bad faith filing. Respondents are each sophisticated businessmen of apparent means [4] with an understanding of the bankruptcy process, of its protections for debtors and debtors'·property during the pendency of a case, and its liabilities.[5] Respondents' understanding of the bankruptcy process includes or should include an understanding of such fundamental principles as the necessity for interest holders to infuse new capital to retain their interests, especially in a proposed cram down plan.[6] *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Case v. Los Angeles Lumber Products Co., Ltd.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939).

Respondents, however, firmly adhered to their intended path (to obtain government financing under factual circumstances which made the possibility thereof virtually nonexistent) after it appeared clearly untenable.[7] Respondents maintained a resolute determination not to expend additional capital on the Property, which entered Chapter 11 as a deteriorating property and became very nearly a slum,[8] unless they obtained matching government funds. Finally, Debtor, through Respondents and its attorney, aggressively opposed Movant's efforts to dismiss or obtain relief from the stay before the end of the year[9] while at

---

**4.** Testimony at the hearing held May 18, 1989, on Movant's motion to dismiss set forth that Mr. Lewis has an approximate net worth of $5 million, Mr. McGlamry of $26 to $27 million, and Mr. Moore of $1 million.

**5.** Debtor was a new entity created for the purpose of filing the instant case. The general partners alleged that the reason for creation of the new entity was to disassociate the Chapter 11 debtor from each of the partners' names and other business enterprises.

**6.** In Debtor's attorney's opening statement in the hearings on Movant's motion for relief from stay or dismissal on bad faith grounds, Debtor's attorney stated that cram down pursuant to 11 U.S.C. § 1129(b) was being considered as an option for Debtor's plan of reorganization. Near the conclusion of the hearing, one of Debtor's general partners evaded answering whether the general partners' willingness to contribute additional money was conditioned upon receiving matching (government) funds. He did say that he would not state whether additional capital would be contributed without matching funds.

**7.** Debtor's application for government funding had been filed after the deadline for the filing of such applications. The government program's supervisor testified that Debtor's application was not even under consideration, nor was it likely to be considered. Under further questioning, the supervisor stated that if Debtor's application were considered, the initial considerations would require a showing of sufficient equity in the Property to support a H.U.D. loan. Debtor's general partners and Debtor's attorney knew or should have known that Debtor would be ineligible for government funding unless Debtor had equity in the Property; Debtor's general partners and Debtor's attorney knew or should have known that Debtor had no equity in the Property.

**8.** In March, 1988 the occupancy of the Property was 81%; by April, 1989, occupancy decreased to 45%. By November, 1989, occupancy was 18% and the condition of the property was reflective of the general partners' abandonment of care.

**9.** Specifically, it appears Debtor's general partners may have been attempting to delay the losses they would incur as a result of the recapture provisions of the Internal Revenue Code which would follow the transfer of the Property by foreclosure. Debtor's principal testified that the Property was originally purchased with the expectation of incurring losses, which were in-

the same time the general partners apparently did nothing to stem the Property's rapid deterioration. Respondents knew or should have known almost from the outset that their untimely application for government funding was without merit. Debtor, via its general partners, abused the Chapter 11 process and the jurisdiction of this court.

■ If a court determines that Rule 11 has been violated, sanctions must be imposed. Bankruptcy Rule 9011; *Asher v. Film Ventures International, Inc.*, 89 B.R. 80 (9th Cir.BAP 1988). The kind of sanction to be imposed is within the discretion of the court. *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987). Precedent exists for Movant's request for reimbursement for the decrease in the value of the Property which resulted from Debtor's bad faith filing. In the case of *Committee of Unsecured Creditors v. Logue (In re Logue Mechanical Contracting Corp.)*, 106 B.R. 436 (Bankr.W.D.Penn.1989), the court found that the debtor's shareholders had unnecessarily caused the corporation to remain in business and incur substantial overhead and operating expenses and that the majority of the overhead and operating expenses inured to the benefit of the shareholders and to the detriment of the corporation and its creditors. The court determined that a reasonable person using ordinary skill, care and diligence would have ceased operations and proceeded to liquidate the business. As a result, the court found the shareholders liable to the corporation for the decrease in the cash balance during the course of the Chapter 11.

■ In the instant case, however, imposing the $900,000 sanction against Respondents may be excessively punitive. Although Debtor's Chapter 11 petition was at its outset filed in bad faith and the resulting alleged decrease in value appears to have resulted from the neglect the Property suffered during the pendency of Debt-

or's Chapter 11 case, a Bankruptcy Rule 9011 motion for sanctions may not be the most appropriate vehicle for recovery of such a loss. Movant may have had available more appropriate avenues in state court.

■ The bad faith filing of Debtor's petition did violate Bankruptcy Rule 9011, however. The petition was filed for an improper purpose, to cause delay, and the parties who signed the petition and the pleadings are subject to sanctions. The primary purpose in imposing sanctions in the instant case is to deter Respondents, Debtor's attorney, and other potential debtors and debtors' attorneys from filing Chapter 11 petitions for improper purposes.

Movant presented time summaries representing the attorney time expended in connection with the above-styled case from March 23, 1988 through May 29, 1990. Time expended before the petition was filed is not appropriately included in the amount of attorney fees for which Movant may be reimbursed. Additionally, in view of the delay in filing the motion for sanctions, time expended after entry of the Dismissal Order will not be included in the amount for reimbursable attorney fees. After deduction of non-reimbursable expenses (word-processing charges) and deduction for intra-office conferences, the amount of attorney fees for which Movant could be reimbursed equals $30,056.79. Accordingly, imposition of sanctions in the amount of $30,000 as reimbursement of Movant's attorneys fees is appropriate to provide the degree of deterrence contemplated by Bankruptcy Rule 9011.

■ Sanctions may be imposed against the individual who signed the pleading [10] or against the litigant represented by the signer. *In re 1801 Restaurant, Inc.*, 40 B.R. 455 (Bankr.D.Md.1984). Generally, sanctions are allocated between counsel and client according to their rela-

---

tended to offset income gained from other properties owned by the general partners.

**10.** *See, Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107

L.Ed.2d 438 (1989), in which the Supreme Court held that Rule 11 authorizes the imposition of a sanction only against the individual attorney who signed the pleading and not against that individual's law firm.

tive culpability in the Rule 11 violation. *See, Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184 (10th Cir.1985). In the instant case, as discussed above, especially in light of their knowledge and understanding of bankruptcy law and process, the general partners are culpable in the bad faith filing of this case.

Additionally, however, it appears that Debtor's attorney failed in his duties to advise his client of the duties and responsibilities attendant upon filing and pursuing a Chapter 11 petition. Attorneys have an ethical obligation to act as gatekeepers to the courthouse; attorneys are "simply not hired guns."[11] Clients should be able to depend upon their attorneys to advise them forthrightly as to both the clients' and the attorney's obligations to the court and other litigants, especially those described in Rule 11.

■ In a Chapter 11 case such as the instant case, the debtor is an artificial entity who may be represented in this court only by its attorney, not by its principals, *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381 (11th Cir.), *reh'g denied en banc,* 775 F.2d 304 (11th Cir.1985), *cert. denied* 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 775 (1986). A Chapter 11 debtor's attorney has a heightened responsibility to the debtor's creditors and to the court. Each case is extremely fact intensive. Debtors' attorneys are not required to be unerring in their predictions of a debtor's prospects for reorganization. Before filing a Chapter 11 bankruptcy petition, or as early as possible after filing, however, debtors' attorneys must marshal the facts, interpret the law and make a reasoned judgment concerning whether the debtor can proceed in good faith.

In the instant case, it appears that Debtor's attorney did not adequately fulfill his duty to evaluate Debtor's prospects for reorganization. In his opening statement at the hearings held on Movant's motion for relief from stay or dismissal on bad faith grounds, Debtor's attorney stated he had no idea whether Debtor could reorganize and that reorganization of Debtor would require creativity. Debtor's attorney, however, at that point in the case, should have been able to marshal sufficient facts to offer more than such a disingenuous prediction of Debtor's prospects for reorganization. Debtor's attorney knew or should have known that Respondents had no articulated intent to invest additional capital in the Property unless Debtor obtained government funding. Debtor's attorney knew or should have known that the likelihood of obtaining government funding was illusory. Therefore, it appears that Debtor's attorney either failed in his duty to evaluate the facts or failed in his duty to advise Respondents of their obligation to proceed in good faith. An attorney cannot insulate himself from the bad faith of his clients by his silence or inaction; much less can he aggressively pursue a course of action—here, maintaining a Chapter 11 reorganization—which is patently bad faith.

■ Movant seeks payment of sanctions only by Debtor's general partners, not by Debtor's attorney. Imposition of sanctions upon both Respondents and Debtor's attorney, however, may be appropriate. Pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 105, this court may impose sanctions against Debtor's attorney even though Movant did not request imposition of sanctions against Debtor's attorney. *See, Styler v. Tall Oaks, Inc., (In re Hatch),* 93 B.R. 263 (Bankr.D.Utah 1988). Due process, however, requires that Debtor's attorney be accorded adequate notice that he may also be subject to sanctions under Bankruptcy Rule 9011. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987). The opportunity to file a written response, however, is sufficient to satisfy due process. *Id.* Accordingly, it is hereby

ORDERED that Movant's motion for sanctions is granted; sanctions pursuant to Bankruptcy Rule 9011 in the amount of $30,000 are awarded as reimbursement for attorney fees to Movant payable jointly and

---

11. As stated by Justice Anthony Kennedy in May, 1990, when addressing the Eleventh Circuit Judicial Conference.

severally by Respondents, Debtor's general partners, Charlie N. McGlamry, Robert G. Lewis, Jr., and H. David Moore. It is further

ORDERED that, within thirty (30) days of the date of entry of this order, Debtor's attorney may file a written pleading to show cause why Debtor's attorney should not also be jointly and severally liable for payment of the above-described sanctions to Movant.