**In re McBRIDE ESTATES, LTD. Debtor.**

**Bankruptcy No. 92–07497.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

March 26, 1993.

---

Frank Rainer, Tallahassee, FL, for movant.

Thomas B. Woodward, Tallahassee, FL, for debtor.

### ORDER IMPOSING RULE 9011 SANCTIONS

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the motion of Barnett Bank of Tallahassee (Barnett) for the imposition of sanctions pursuant to Bankruptcy Rule 9011 against the debtor McBride Estates Ltd. and its attorney Thomas B. Woodward. For the reasons set forth herein, we find that the imposition of sanctions as requested by Barnett is appropriate and the motion will be granted.

This was a Chapter 11 case which was dismissed on motion of the debtor on March 8, 1993, following this court's granting Barnett relief from the automatic stay of 11 U.S.C. § 362(a) to permit it to complete its foreclosure sale of the debtor's property. The debtor in this case filed its petition for relief under Chapter 11 at 9:09 a.m., October 30, 1992. This filing occurred just two hours prior to the scheduled foreclosure sale of the debtor's principal asset, 39 lots of the McBride Estates subdivision.

Prior to the filing of the petition in this case, this court confirmed a Chapter 11 plan of reorganization for Equity Resources, Inc., the sole general partner of the debtor McBride Estates, Ltd. (McBride) in which McBride, Equity Resources, Inc., and Barnett entered into a settlement agreement dealing with Barnett's claim against McBride and which settlement agreement was incorporated in Equity Resources' plan of reorganization. The Equity Resources plan was confirmed by order of this court dated August 7, 1992. Pursuant to the settlement agreement, McBride has agreed to make certain payments to Barnett on various dates. Additionally, the settlement agreement provided explicitly that should McBride file a petition for bankruptcy, it would consent immediately to the lifting of the automatic stay in such case.

During the pendency of the Equity Resources, Inc. Chapter 11, Barnett had instituted its state court foreclosure proceeding against McBride. The settlement agreement was presented to and approved by the state court and provided that

"if such payments are not kept current, bank shall have the right at its option to obtain a final judgment of foreclosure, substantially in compliance with Form 1.996 of the *Florida Rules of Civil Procedure* (1991) as subsequently amended from time to time. Lender may seek such final judgment of foreclosure ex parte, and without notice to debtors, upon submitting the affidavit and the form attached hereto to the court."

When McBride failed to make any of the payments called for in the settlement agreement, Barnett filed its affidavit, and obtained its final judgment of foreclosure with the foreclosure sale scheduled at 11:00 a.m., October 30, 1992.

As previously noted, McBride filed its Chapter 11 petition at 9:09 a.m. October 30th thus staying the sale of its property. Barnett promptly filed its motion for relief from the automatic stay citing as grounds therefor the previous agreement by which the debtors had stipulated to the lifting of the stay and that the filing of the bankruptcy petition was in bad faith. Rather than stipulating to the lifting of the stay, the debtor through its attorney, Thomas B. Woodward filed an extensive response to the motion contesting Barnett's entitlement to relief from the automatic stay, and alleging substantial equity in the property based on a December, 1988 appraisal. In the debtor's response to the allegations in the bank's motion regarding the bad faith of the petition, one paragraph is noteworthy:

(F) Subparagraph (F) is admitted and debtor would assert that the eleventh hour filing of Chapter 11 petitions to prevent foreclosures or seizure of assets is the norm rather than the exception under Chapter 11, Title 11 of the United States Bankruptcy Code.

This court conducted a preliminary hearing on Barnett's motion in accordance with the provisions of 11 U.S.C. § 362(e) at which time this court granted Barnett's motion finding that the stipulation contained in the settlement agreement for the lifting of the automatic stay constituted sufficient cause under 11 U.S.C. § 362(d)(1) for the lifting of the automatic stay. Subsequent to the entry of that order, the instant motion for Rule 9011 sanctions was filed by Barnett and the debtor moved to voluntarily dismiss the Chapter 11. This case was dismissed with a retention of jurisdiction to resolve the motion for sanctions.

The debtor's response to the motion for sanctions asserts that following the confirmation of the Equity Resources, Inc. plan of reorganization, the debtor through the president of its general partner began negotiations with a local builder for the sale of a majority if not all of the lots owned by the debtor. At the time Barnett set its foreclosure sale, the prospective purchaser was attempting to coordinate financing for the purchase of the property. However, there is no assertion by the debtor that there had been any contract for the sale of the property to be presented nor is there any assertion regarding a proposed sale price of the properties. Subsequent to the filing of the Chapter 11 and the filing of the bank's motion for relief from stay, the

prospective purchaser was no longer interested in purchasing the property.

The debtor argues that this negotiation for sale should vitiate the agreement between the debtor and Barnett for the consent to the lifting of the automatic stay in any bankruptcy proceedings filed by McBride, Ltd. In support of this assertion, the debtor cites the case *In re B.O.S.S. Partners I*, 37 B.R. 348 (Bankr. M.D.FL1984), the same case cited by Barnett to support the enforceability of the agreement. In that case, Chief Judge Paskay in considering the enforceability of a stipulation between a debtor and creditor regarding a waiver of certain bankruptcy protections, stated as follows:

> Considering these contentions, seriatim, this court is satisfied that the holding of *In re Philadelphia Athletic* [20 B.R. 322 (Bkrtcy.E.D.Pa.1982)], supra generally represents the law and this court is in agreement with the principal *that a stipulation freely entered into by the parties is binding on the parties. In the context of a stay litigation, such stipulation operates as a waiver by the debtor of any right to obtain protection from court against proceedings instituted by a secured party for the purpose of enforcing its security interest.* This proposition, however, is not etched in cement and should not be applied in an inflexible and pragmatic manner and under proper circumstances, the court may use its equitable powers and grant further relief to a debtor pursuant to § 105 of the Code. For instance, *if there is a radical and new development which drastically changes the economic picture and the value of the collateral, the liquidation of which assures a prompt satisfaction of the claim of the secured parties in full, it is clear that this court may grant additional relief to the debtor by way of injunctive relief.* (Emphasis supplied)

*Id* at 350. It is the position of the debtor in this case that in reliance on that language from *B.O.S.S. Partners I* its petition under Chapter 11 and its resistance to the motion from relief from stay were well grounded in fact and in law.

■ The circumstances presented in this case do not even remotely approach a "radical and new development" as discussed by Judge Paskay in *B.O.S.S. Partners I*. First, the debtor never even mentioned the existence of a potential purchaser in connection with the stay litigation. Secondly, even the assertion and affidavit presented in opposition to the motion for sanctions failed to disclose any proposed purchase price or method of payment which would have provided a prompt satisfaction of Barnett's claim in full. Accordingly, we find that the debtor failed to even present a colorable basis for relieving it of the obligations set forth in its previous agreement.

■ While this court did not reach the issue of bad faith in the filing of this petition in the course of the relief from stay proceedings, it is well settled that sanctions under B.R. 9011 may be imposed against debtors who file bankruptcy petitions in bad faith. *In re Whitney Place Partners*, 123 B.R. 117 (Bankr.N.D.Ga. 1991). As set forth in *Whitney Place Partners*, "the standard is not whether the petition was filed in bad faith but whether the debtors or their attorneys knew or should have known that the filing was in bad faith." *Id.* at 121, citing *In re Villa Madrid*, 110 B.R. 919 (9th Cir. BAP 1990). Furthermore, in considering the imposition of sanctions the court may consider not only the initial petition but all subsequent pleadings filed in the case. *Id.*

■ In the instant case, there is no question but that the debtors and their attorney knew or should have known that the filing of the petition under Chapter 11 was in bad faith. The following facts, which closely mirror the list of factors set forth in *In re Phoenix Piccadilly*, 849 F.2d 1393 (11th Cir.1986) were shown to be present at the time this Chapter 11 petition was filed:

a) The debtor had at the time of its petition $565,000 in secured claims (of which $552,000 was owed to Barnett pursuant to its final judgment of foreclosure) and only $23,500 in unsecured claims of which $23,200 were in favor of a corporation, the

principal of which was a limited partner of the debtor.

b) Pursuant to Schedule E and the current Monthly Income and Expenditure Schedule, McBride did not list any wage expenses and apparently has no employees.

c) Pursuant to the Statement of Financial Affairs, McBride has not had any income nor conducted any business activity for the years 1991 and 1992.

d) McBride has only one asset, the subdivision known as McBride Estates, which consists of approximately 46 lots all of which are encumbered by first mortgages.

e) McBride's financial troubles involve a dispute solely between McBride and Barnett which could adequately be resolved in the pending state court action.

f) McBride's timing of its filing of the Chapter 11 petition just two hours prior to the foreclosure sale evidences an intent to delay or frustrate Barnett's efforts to secure its rights in the state court. Additionally, in its schedules, McBride inaccurately listed Barnett's debt as unliquidated in spite of the fact that McBride and its counsel knew that the Final Judgment in Foreclosure had been entered which fixed and liquidated the debt. This inaccurate listing of Barnett's debt is further evidence of the intent on behalf of the debtor to cause needless litigation expense to Barnett.

g) McBride has no source of income other than the sale of lots and McBride had not sold a single lot in the last two years. The last payment to Barnett was made on April 1, 1991 and the property taxes were delinquent on the property for the years 1989, 1990, 1991, and 1992.

■ That this type of fact pattern occurs all too commonly and that "the eleventh hour filing of Chapter 11 petitions to prevent foreclosure or seizure of assets is the norm rather than the exception under Chapter 11, Title 11 of United States Bankruptcy Code" should not serve to excuse a debtor and its attorney from sanctions where the indicia of bad faith are as clear as they are in this case. The number reported of cases from both the Eleventh Circuit Court of Appeals and from bankruptcy courts within the Eleventh Circuit which have found Chapter 11 petitions to have been filed in bad faith continues to grow on almost a monthly basis. Our review of just Florida bankruptcy cases since 1990 reveals a total of 21 reported decisions from bankruptcy courts in Florida in which it was found by the courts that Chapter 11 petitions were filed in bad faith. While not every single asset real estate case is per se a bad faith filing, absent a demonstrated ability to successfully reorganize at the inception of such a case, it is apparent that the vast majority of such cases will be found to have been filed in bad faith. Given the extensive case law on this subject within this circuit, attorneys filing such cases should be cognizant of the burden they carry in demonstrating that such cases are not filed in bad faith lest they leave themselves exposed to the imposition of Rule 9011 sanctions.

The apparently growing belief that no foreclosure sale should go unstayed by a Chapter 11 petition must be tempered by the realization that those filing such petitions may be held to pay the substantial cost incurred by secured creditors as a result of such last minute filings.

■ Based on the foregoing findings, we find that the filing of the Chapter 11 petition by McBride and its resistance to Barnett's motion for relief from the stay were done for an improper purpose, that is the unnecessary delay in the completion of the foreclosure sale by Barnett Bank, and that such petition and opposition were not well grounded in fact or warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. B.R. 9011. The costs incurred by Barnett as a result of the actions of McBride Estates and its attorney in filing the petition for relief under Chapter 11 and resisting the motion for relief from stay are as follows:

1) $1,440.88 publication costs for foreclosure sale.

2) $190.00 paralegal expenses preparing for foreclosure sale.

3) $2,340.50 attorney's fees in connection with the motion for relief from stay.

4) $60.00 filing fee for motion for relief from stay.

5) $500 attorney's fees in connection with the motion for sanctions.

Total $4,531.38.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion for sanctions pursuant to B.R. 9011 filed by Barnett Bank be and same is hereby granted and McBride, Ltd. and its attorney, Thomas B. Woodward, Esq. be and they are ordered jointly and severally to pay to Barnett within thirty (30) days the sum of $4,531.38.

DONE AND ORDERED.